**KAISER STEEL CORPORATION, Plaintiff–Appellant,**

v.

**CHARLES SCHWAB & CO., INC.; Securities and Exchange Commission, Defendants–Appellees,**

and

**National Financial Services Inc.; Unterberg, Towbin, Shearson Lehman Brothers/American Express Inc.; Amsouth Bank, N.A.; Bank of New England; Bank of New England–West; Boettcher & Company, Inc.; Drexel, Burnham & Lambert, Inc.; Brown Brothers Investment Company, Brown Brothers Harriman & Co.; Burke, Christensen & Lewis Securities, Inc.; Piper, Jaffray &**

**Hopwood, Incorporated; Sspeak, Leeds & Kellogg; The Chicago Corporation; SLK–SEG; Tweedy Brown Clearing Corporation; Dillon, Read & Co.; Edward D. Jones & Co.; Fahnestock & Co.; Edward A. Viner & Co.; First Albany Corp.; Tucker, Anthony & R.L. Day, Inc.; Thompson, McKinnon & Co., Inc.; Wells Fargo; Crocker National Bank; Kellner, Dileo & Co., Inc.; Mabon, Nugent & Co.; Ernst & Company; Evans & Co., Inc.; JW Charles Securities, Inc.; Josephthal & Co., Inc.; Herzfeld & Stern, n/k/a JII Securities, Inc.; Lewco Securities Corp.; National Bank of Detroit; May Financial Corporation; Manufacturers and Traders Trust Co.; Bankers Trust of New York; Olde Discount Corporation; Roney & Co.; Stifel Nicolous & Company; United States Trust Company of New York; Pacific & Co.; Securities Settlement Corporation; Stephens, Inc.; Chemical Bank; Morgan Guaranty Trust Company of New York; Millikin National Bank of Decatur, Defendants,**

and

**Bear Stearns & Co., Inc.; Cowen & Co.; Doft & Co., Inc.; L.F. Rothschild & Co., Inc.; Smith, Barney, Harris, Upham & Co., Inc.; Herzog, Heine & Geduld, Inc.; M.H. Davidson & Co. Inc.; Cascade Fund, Defendants–Intervenors.**

No. 90–1078.

United States Court of Appeals, Tenth Circuit.

Sept. 7, 1990.

Rehearing Denied Oct. 24, 1990.

Susan M. Freeman, Lewis and Roca, Phoenix, Ariz. (Marty Harper, Lewis and Roca, Phoenix, Ariz., G. Stephen Long, and David J. Richman, Coghill & Goodspeed, Denver, Colo., with her, on briefs), for plaintiff-appellant.

Thomas H. Young (Michael J. Guyerson, with him, on brief), Rothgerber, Appel, Powers & Johnson, Denver, Colo., for defendant-appellee, Charles Schwab & Co., Inc.

Katharine Gresham, Asst. Gen. Counsel (Paul Gonson, Sol., of counsel, James R. Doty, Gen. Counsel, Jacob H. Stillman, Associate Gen. Counsel, and Joseph H. Harrington, with her, on brief), S.E.C., Washington, D.C., for defendant-appellee, Securities and Exchange Com'n.

David I. Blejwas, Hahn & Hessen, New York City, for defendants-intervenors.

Before HOLLOWAY, Chief Judge, and ANDERSON and TACHA, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Debtor-in-possession Kaiser Steel Resources, Inc. ("Kaiser"), formerly known as Kaiser Steel Corporation ("Kaiser Steel"), appeals from the district court's reversal of the bankruptcy court's order denying defendant Charles Schwab & Company, Inc. ("Schwab") summary judgment. We affirm.

In late 1983, the board of directors of Kaiser Steel, a publicly-traded corporation, agreed to a leveraged buyout ("LBO") by a group of outside investors ("the acquisition group"). Under the plan, a new entity owned by the acquisition group would purchase all outstanding Kaiser Steel common stock and merge with Kaiser Steel. Each share of Kaiser Steel common stock would be converted into the right to receive twenty-two dollars and two shares of preferred stock [1] in the surviving entity. The money, which amounted to $162 million, was to come from Kaiser Steel's cash reserves and a $100 million loan from Citibank secured by the corporation's assets. R.Vol. I, Tab 10 at 3–4, Ex. 17 at 27–37.

The shareholders approved the LBO on January 18, 1984. As of the effective date of the merger, February 29, 1984, holders of Kaiser Steel common stock were required to tender their shares to Kaiser's disbursing agent, Bank of America, which distributed the cash and preferred stock. R.Vol. I, Tab 10 at 4. The New York Stock Exchange delisted the stock the following day. R.Vol. II, Tab 46, Ex. 1 at 1.

Among the holders of Kaiser Steel common stock were customers of Schwab, a securities broker. Most of the certificates were in the possession of the Depository Trust Company ("DTC"), a securities clearinghouse. DTC tendered the shares to Bank of America, and received the cash and preferred stock in the surviving entity. DTC transferred the money to Schwab through the National Securities Clearing Corporation, which sponsors Schwab's participation in DTC. R.Vol. I, Tab 9 at 1, 4–6. Some of the transfers were made directly between Schwab and Bank of America because DTC stopped handling Kaiser stock. Id. at 6–7; R.Vol. II, Tab 12, Ex. A at 2. Schwab credited its customers' accounts within a few days of receiving the funds.

---

1. The surviving entity's common stock would be owned entirely by the acquisition group.

R.Vol. II, Tab 12, Ex. B at 2–3. All told, Schwab handled approximately $450,000. R.Vol. I, Tab 9 at 8.

In 1987, Kaiser filed for bankruptcy. The debtor-in-possession commenced this fraudulent conveyance action against a number of defendants, seeking to avoid the LBO and recover the $162 million. Schwab moved for summary judgment on two grounds: that it was not liable because it was a "mere conduit" rather than a transferee, *see* 11 U.S.C. § 550(a), and that the LBO payments were exempt from avoidance as settlement payments, *see* 11 U.S.C. § 546(e).[2] The bankruptcy court denied the motion. *In re Kaiser Steel Corp. (Kaiser Steel Corp. v. Jacobs )*, 105 B.R. 639 (Bankr.D.Colo.1989). The district court accepted an interlocutory appeal and reversed the bankruptcy court on both issues. *In re Kaiser Steel Corp. (Kaiser Steel Resources, Inc. v. Jacobs )*, 110 B.R. 514 (D.Colo.1990). The district court then entered a final judgment in the matter pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Because we affirm on the settlement issue, we do not reach the conduit question.

A trustee or debtor-in-possession may not avoid

> a transfer that is a margin payment, as defined in section 741(5) or 761(15) of this title, or a settlement payment, as defined in section 741(8) of this title, made by or to a commodity broker, forward contract merchant, stockbroker, financial institution or securities clearing agency, that is made before the commencement of the case, except under section 548(a)(1)[3] of this title."

11 U.S.C. § 546(e). Section 741(8) defines settlement payment as "a preliminary settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). We

agree with the district court that the transfer of the consideration in the LBO was a settlement payment.

The definition in section 741(8), while somewhat circular, is "extremely broad," *In re Bevill, Bresler & Schulman Asset Management Corp. (Bevill, Bresler & Schulman Asset Management Corp. v. Spencer Savings & Loan Ass'n )*, 878 F.2d 742, 751 (3d Cir.1989), in that it clearly includes anything which may be considered a settlement payment. *See In re Blanton (Blanton v. Prudential–Bache Securities, Inc.)*, 105 B.R. 321, 347 (Bankr.E.D.Va. 1989) (because margin and settlement payment are "very broadly defined by the Bankruptcy Code," court accepts the argument that "any payment by [the debtor] which was used to reduce a deficiency in his margin account constituted either a margin or settlement payment for purposes of the exception under § 546(e)"); *see also In re Bevill, Bresler & Schulman Asset Management Corp. (Cohen v. Savings Building & Loan Co.)*, 896 F.2d 54, 61 (3d Cir.1990) (holding that transferring securities to a safekeeping account for a purchaser is a settlement payment; apparently overruling *In re Bevill, Bresler & Schulman, Inc. (Hill v. Spencer Savings & Loan Ass'n )*, 94 B.R. 817, 828–29 (D.N.J. 1989)). *But cf. In re Edelsberg (Edelsberg v. Thompson McKinnon Securities, Inc.)*, 101 B.R. 386, 389 (Bankr.S.D.Fla.1989) (execution of judgment on debt for settlement payment is not itself a settlement payment).

Such an interpretation "is consistent with the legislative intent behind § 546 to protect the nation's financial markets from the instability caused by the reversal of settled securities transactions." *Kaiser Steel Resources, Inc. v. Jacobs,* 110 B.R. at 522.

Section 546 was first enacted in 1978, and applied only to commodities markets.

---

**2.** Actually, Schwab's motion only raised the conduit question. The settlement payment issue was raised by other defendants which were allowed to intervene. We permitted these defendants to intervene before this court as well.

**3.** 11 U.S.C. § 548(a)(1) applies to transfers made within a year of the bankruptcy filing with actual intent to hinder, delay, or defraud a creditor.

*See* 11 U.S.C. § 764(c) (repealed 1982).[4] "Settlement payment" was not defined. Congress sought to "promote customer confidence in commodity markets generally" via "the protection of commodity market stability." S.Rep. No. 989, 95th Cong., 2d Sess. 8 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5794. However, because the provision only applied to margin payments to brokers and settlement payments from clearing organizations, it could be said only to "protect[ ] the ordinary course of business in the market." H.R.Rep. No. 595, 95th Cong., 2d Sess. 392 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963, 6348. *But see* 124 Cong.Rec. 17,433 (1978) (the section "protect[s] all margin payments in the customer-broker-clearinghouse chain") (statement of Sen. Mathias).

In 1982, "Congress was concerned about the volatile nature of the commodities and securities markets …," *Bevill, Bresler & Schulman Asset Management Corp. v. Spencer Savings & Loan Ass'n,* 878 F.2d at 747, so former section 764(c) was replaced by sections 546(e) and 741(5) and (8) "to clarify and, in some instances, broaden the commodities market protections and expressly extend similar protections to the securities market." H.R.Rep. No. 420, 97th Cong., 2d Sess. 2 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 583, 583. The protection was expanded beyond the ordinary course of business to include margin and settlement payments to and from brokers, clearing organizations, and financial institutions.[5] Again, Congress's purpose was "to minimize the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." *Id.* at 1, *reprinted in* 1982 U.S.Code Cong. & Admin. News at 583. The danger of a "ripple effect," *id.,* on the entire market is at least as inherent in the avoidance of an LBO as it is in the avoidance of a routine stock sale.

Finally, interpreting "settlement payment" to include the transfer of consideration in an LBO is consistent with the way "settlement" is defined in the securities industry. Settlement is "the completion of a securities transaction." A. Pessin & J. Ross, *Words of Wall Street: 2000 Investment Terms Defined* 227 (1983); *accord* D. Brownstone & I. Franck, *The VNR Investor's Dictionary* 279 (1981) ("finishing up of a transaction or group of transactions"); Group of Thirty, *Clearance and Settlement Systems in the World's Securities Markets* 86 (1989) ("[t]he completion of a transaction, wherein securities and corresponding funds are delivered and credited to the appropriate accounts"); New York Stock Exchange, *Language of Investing Glossary* 30 (1981) ("[c]onclusion of a securities transaction when a customer pays a broker/dealer for securities purchased or delivers securities sold and receives from the broker the proceeds of a sale"); D. Scott, *Wall Street Words* 320 (1988) ("[t]ransfer of the security (for the seller) or cash (for the buyer) in order to complete a security transaction").[6] The Securities

---

**4.** Commodities markets were singled out because the measure was a response to the decision in *Seligson v. New York Produce Exchange,* 394 F.Supp. 125 (S.D.N.Y.1975), that a trustee could recover a margin payment made to a commodities clearinghouse. White, *The Commodity–Related Provisions of the Bankruptcy Act of 1978,* 34 Rec.Bar.A. Bar City of New York 262, 269–71 (1979); *see* Sen.R.Rep. No. 989, 95th Cong., 2d Sess. 106 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5892.

**5.** One commentator takes the position that the 1982 amendment did not expand the provision. *See* 4 L. King, *Collier on Bankruptcy* ¶ 546.05, at 546–24 (15th ed. 1990). We reject this position, for it ignores significant changes in the statutory language. "Where the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have a different meaning." *Muscogee (Creek) Nation v. Hodel,* 851 F.2d 1439, 1444 (D.C.Cir.1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989).

**6.** Some sources limit the concept of "settlement" to the consummation of routine securities transactions. *See, e.g.,* C. Ammer, *The A to Z of Investing* 243 (1986); M. Thomsett, *Webster's New World Investment and Securities Dictionary* 261 (1986). Kaiser's expert witness held this view. *See* R.Vol. II, Tab 46, Ex. 2 at 2–3. So narrow a definition has already been rejected. *See Bevill, Bresler & Schulman Asset Management Corp. v. Spencer Savings & Loan Ass'n,* 878 F.2d at 751–52 (declining to "accept the district court's interpretation of 'settlement payment' as

and Exchange Commission has taken the position before this court that the consummation of an LBO is a "settlement payment" exempted from avoidance by section 546(e).[7]

Kaiser's position that section 546(e) was only intended to insulate from avoidance routine securities transactions is not without merit. Neither LBOs nor other exceptional transactions were even mentioned in any of the discussions of the securities industry in the reports, debates, and hearings on the bill. *See Bankruptcy of Commodity and Securities Brokers: Hearings Before the Subcomm. on Monopolies and Commercial Law of the House Comm. on the Judiciary,* 97th Cong., 1st Sess. 238–349 (1981). However, because of the variety and scope of different securities transactions, and the absence of any restrictions in sections 546(e) and 741(8), it would be an act of judicial legislation to establish such a limitation.

What occurred in this case was "the delivery and receipt of funds and securities." *National Securities Clearing Corp.,* 42 Fed.Reg. 3916, 3920 n. 56 (1977). The LBO was a securities transaction.[8] The transfer of money and preferred stock was the settlement of that transaction. Therefore, the transfers to Schwab were exempt from avoidance under section 546(e) as "settlement payment[s] ... to a ... stockbroker."

a transaction that is completed within five days of the original agreement").

**7.** The SEC filed a brief in this case and participated in oral argument. As a statutory party in corporate reorganization proceedings, the Commission acts as a special advisor to the courts. *See* 11 U.S.C. § 1109(a). Although precluded from initiating an appeal when appearing in this capacity, the Commission may participate in an appeal taken by others. *Sheftelman v. Standard Metals Corp.,* 839 F.2d 1383, 1386 (10th Cir.1987), *cert. dismissed,* 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988).

**8.** Because Kaiser Steel common stock was converted from incidents of corporate ownership into the right to receive cash and preferred

The judgment of the district court is AFFIRMED.

stock in the surviving entity, and could no longer be traded on the New York Stock Exchange, Kaiser contends that the shares were no longer securities, so the LBO was not a securities transaction.

We disagree. The shares were securities when the parties agreed to the LBO. A technical change in how Kaiser regarded them after the merger should not obscure the more sensible interpretation of the transaction: that the owners of Kaiser Steel sold their common stock for cash and preferred stock. That LBOs of publicly-traded companies are securities transactions is shown by the fact that they are within the purview of the Securities and Exchange Commission. *See* 17 C.F.R. 240.13e–3; *see also Regulatory Flexibility Agenda and Rules Scheduled for Review,* 54 Fed.Reg. 45,646 (1989).