In Re C–T OF VIRGINIA, INC., f/k/a Craddock–Terry Shoe Corporation, Debtor.

C–T OF VIRGINIA, INC., f/k/a Craddock–Terry Shoe Corporation, Plaintiff,

v.

PAINEWEBBER INCORPORATED, Defendant.

No. 687–01155–WA1.
Civ. A. No. 90–0022–L.

United States District Court,
W.D. Virginia,
Lynchburg Division.

Nov. 27, 1990.

Edward B. Lowry, Charlottesville, Va., Harold Bonacquist, Traub, Bonacquist, Yellen & Fox, Eric J. Snyder, Summit, Rovins & Feldesman, New York City, for debtor-plaintiff.

John E. Falcone, Smith & Falcone, Lynchburg, Va., Jonathan S. Greenberg, Weil, Gotshal & Manges, New York City (Ann E. Dibble, Jacqueline Marcus, Kevin P. Hughes, of Weil, Gotshal & Manges, of counsel), pro hac vice, for defendant.

## MEMORANDUM OPINION

KISER, District Judge.

This matter is before me on a motion for summary judgment filed by plaintiff. This is an adversary proceeding brought by the Official Committee of Unsecured Creditors of C–T of Virginia, Inc., formerly Craddock–Terry Shoe Corporation on behalf of C–T of Virginia against PaineWebber, Inc. This suit arises out of a statutory merger wherein C–T merged with HH Holdings, Inc. ("HH").

### Background

The facts of this matter are largely undisputed. On October 28, 1985, HH and PaineWebber executed an Engagement Letter which provided for PaineWebber to serve HH as financial advisor with respect to the proposed acquisition of C–T. Sidney Kimmel, the principal of HH, guaranteed the PaineWebber's payment. HH first offered to merge with C–T on November 30, 1985, and after negotiations, the merger was consummated on April 30, 1986. Prior to the closing, defendant advised HH that it wished to be paid $1,500,000 at the merger for services rendered to HH. A later bill increased this amount to $1,600,000 to include legal services. However, insufficient funds were available at that time to make the payment. Instead, plaintiff agreed to assume HH's debt to defendant, and defendant agreed to accept payment from plaintiff at a future time. PaineWebber asserts that it continued to provide services for plaintiff after the merger. On November 26, 1986, after it received a reversion from its employee's pension fund, C–T paid $600,000 to PaineWebber. The $1,000,000 balance has not been paid.

C–T filed for bankruptcy on October 21, 1987. In its bankruptcy filing, it listed a $1,000,000 claim by PaineWebber. In a complaint filed on January 30, 1990 in bankruptcy and later withdrawn to this court, C–T now seeks to recover the $600,000 payment to PaineWebber as a preferential payment voidable under the bankruptcy law, a fraudulent conveyance, or a voluntary conveyance voidable under Virginia law. C–T now seeks summary judgment only on the preferential payment and voluntary conveyance counts.

### Motion for Summary Judgment

Under Va.Code § 55–81, a gift is void to creditors if it is "not upon consideration deemed valuable in law." The Virginia Supreme Court has not defined this phrase in a commercial context, but it appears appropriate to follow the same standard for determining whether a transfer was for "less than a reasonably equivalent

value" under the Bankruptcy Code, 11 U.S.C. § 548(a)(2)(A). *See Hyman v. Porter,* 37 B.R. 56 (Bankr.E.D.Va.1984). The central legal issue in this case is whether PaineWebber provided any valuable consideration to C–T for the $600,000 that it received.

■■■■ HH Holdings and not C–T contracted for services with PaineWebber. It is well-established that a bankruptcy trustee may avoid transfers made by the bankrupt to pay valid debts of a corporate affiliate. *In re Rodriguez,* 895 F.2d 725 (11th Cir.1990); *Rubin v. Manufacturers' Hanover Trust Co.,* 661 F.2d 979, 991 (2d Cir. 1981). In this case, C–T and C–T's creditors gained nothing by the partial extinguishment of HH's debt.

*Rubin* suggests that some payments on behalf of a corporate subsidiary may result in fair consideration to the bankrupt, and should not be avoidable. In the absence of a written contract, the party that claims to have provided the fair consideration is in the best position to prove what it did. PaineWebber makes a vague claim that its role was necessary to the buyout, and that the buyout benefitted C–T by giving it new and better management. PaineWebber has not attempted to quantify the value of this purported benefit to C–T, and I am not convinced that it could be "deemed valuable in law." *See Credit Managers Association v. Federal Co.,* 629 F.Supp. 175, 182 (C.D.Cal.1985) (In buyout, new management services were not valuable consideration because they did not belong to buyer and had no identifiable value); *United States v. Gleneagles Investment Co.,* 565 F.Supp. 556, 576 (M.D.Penn.1983) ("We are of the opinion that new management does not fall within the definition of fair consideration in the [Pennsylvania Fraudulent Conveyance] Act"), *aff'd sub nom. United States v. Tabor Court Realty Co.,* 803 F.2d 1288 (3d Cir.1986), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987). The available evidence compels the conclusion that the payment was intended to cover the costs of HH's contract with PaineWebber before the merger, and that HH benefitted by gaining an ownership interest in C–T.

PaineWebber also claims that it provided services to C–T after the merger. However, it has not introduced any records of these services into evidence. Discovery problems do not excuse the failure to provide particularized evidence, since a sophisticated firm such as PaineWebber should be able to prove what services it provided in the recent past. The absence of proof lends credence to C–T's claim that PaineWebber maintained contact after the merger in order to protect its interest in a fee.

PaineWebber's principal defense is that the payment was made to repay part of an antecedent debt, and therefore was for value under both the Bankruptcy and the Virginia Code. Again, the only signed contract is with HH, not C–T; the only evidence of the antecedent debt is a statement on C–T's financial report of July 1986, listing a debt to PaineWebber of $1,500,000. C–T's acknowledgement of this debt, however, does not prevent the general unsecured creditors from seeking to have it set aside. 11 U.S.C. § 544(b). C–T's report does not list any services performed by PaineWebber, and is consistent with C–T's contention that the debt was simply assumed from HH at the merger. The bankruptcy trustee need not recognize such an assumption if no "consideration deemed valuable in law" was given.

■■■ PaineWebber's counsel suggested at oral argument that because C–T assumed the debt to PaineWebber more than one year prior to bankruptcy, it cannot now challenge the validity of the assumption. Whatever the validity of that argument with respect to the Bankruptcy Code, it is irrelevant to the Virginia Voluntary Gift statute. That statute allows avoidance of all transfers within five years of the filing of the suit. Va.Code § 8.01–253. C–T may avoid the conveyance on the theory that either the payment of October 1986 or the assumption of May 1986 was given without valuable consideration.

■■■ PaineWebber also contends that the payment it received actually came from Kimmel and HH Holdings, not from C–T.

The funds from which the $600,000 was withdrawn came from a reversion from the C–T pension fund. 29 U.S.C. § 1344(d)(2)(C) specifies that residual assets of a single employer pension plan may be distributed to the "controlled group" of the corporation, or to the corporation itself. PaineWebber argues that because the controlled group included Kimmel and HH Holdings, the entire controlled group and not C–T actually made any payments from the proceeds of the pension reversion.

Assuming *arguendo* that the "controlled group" included Kimmel and HH Holdings, this reasoning does not save PaineWebber. The $600,000 was drawn from the C–T treasury, and the source of funds to C–T is irrelevant. It is undisputed that HH and Kimmel contributed roughly $4 million to C–T's capital base at the time of the merger, and it is possible that they made an additional contribution when they allowed C–T to take the proceeds from the pension reversion. By allowing C–T to use the funds, they authorized C–T to use the money for retirement of its own debts. PaineWebber cannot claim on their behalf that they did not intend to make this contribution to the firm they controlled.

 PaineWebber also argues that there is a material issue of fact as to whether C–T had unreasonably small capital at the time of the payment to PaineWebber. This disputed issue of fact might necessitate a trial in order to rule on the preferential transfer under the bankruptcy code. However, Va.Code § 55–81 (1986 Repl.Vol.) did not require any comparable showing.[1] Because I have granted full relief under the Virginia statute, I need not consider the financial condition of C–T at the time of the payment.

*Additional Relief*

 C–T has requested additional relief in addition to the avoidance of the $600,000 payment. First, it requests that PaineWebber's claim against C–T be disallowed in its entirety. This will relieve the estate in bankruptcy from paying any por-

tion of the $1,000,000 still claimed by PaineWebber, but never paid. The assumption by C–T of the $1,000,000 debt is voidable for all of the reasons that the $600,000 payment is voidable. This request shall be granted. C–T has also requested attorney's fees. It has cited no authority for this request, and the statutes do not provide for such an award. This request shall be denied.

Both parties have moved for protective orders in connection with alleged discovery abuses by the opposition. Because this ruling disposes of the case entirely, all pending discovery motions shall be dismissed as moot.

### ORDER

On November 5, 1990, came the parties on Plaintiff's Motion for Partial Summary Judgment. Upon consideration, it is hereby ADJUDGED and ORDERED:

(1) Plaintiff's Motion for Summary Judgment with respect to Count III of its complaint is hereby GRANTED and judgment is hereby entered in favor of Plaintiff in the amount of $600,000 plus interest at 7.51% per annum from November 21, 1986, and the taxable cost of this action.

(2) PaineWebber's claim for $1,000,000 against C–T in connection with services is hereby DISALLOWED.

(3) All pending discovery motions in the above-captioned case are hereby DISMISSED AS MOOT.

The Clerk is directed to send a certified copy of this Order to all counsel of record and to Bankruptcy Judge William E. Anderson, and to strike this case from the active docket of this Court.

---

**1.** The statute was amended in 1988, and now requires proof of insolvency after the transfer. The amendment was not retroactive, and does not affect this case.