C–T OF VIRGINIA, INC., f/k/a Craddock–Terry Shoe Corporation, Plaintiff,

v.

**EUROSHOE ASSOCIATES LIMITED PARTNERSHIP, et al., Defendants.**

**Civ. A. No. 90–0043–L.**

United States District Court, W.D. Virginia, Lynchburg Division.

April 22, 1991.

Edward B. Lowry, Michie, Hamlett, Lowry, Rasmussen & Tweel, P.C., Charlottesville, Va., and Harold Bonacquist, Paul Traub, Fredrick J. Levy, Traub, Bonacquist, Yellen & Fox, New York City, for C–T of Virginia, Inc.

David D. Embrey, Cunningham & Embrey, Lynchburg, Va., for Edgar T. and Georgia K. Harris, Mary M. Hunt, Edgar L. and Vera B. Dehner Living Trust, Vera B. Dehner, Jonathan D. Dehner Co., Wood W. Lay.

Carter R. Allen, Allen & Carwile, Waynesboro, Va., for Ruth B. Cohn and Dorothy L. Mondell.

C. Burton Gerhardt, pro se.

W. Martin Johnson, pro se.

James J. Sakolosky, Davidson, Sakolosky & Richards, P.C., Lynchburg, Va., for Schewel Furniture Co.

Carter R. Allen, Allen & Carwile, Waynesboro, Va., and Ned L. Fisher, Hall,

---

Holmberg, Roach, Johnston & Fisher, Waukegan, Ill. for Ruth B. Cohn and Dorothy L. Mondell.

Richard E.B. Foster, Magee, Foster, Goldstein & Sayers, Roanoke, Va., for Harold and Karl D. Walls.

Alexander W. Bell, Lynchburg, Va., and Thomas E. Palmer, Squire, Sanders & Dempsey, Columbus, Ohio, for Euroshoe Associates Ltd. Partnership, and N.V. Euro Shoe Unie.

Benjamin C. Ackerly, Virginia W. Powell, Tyler P. Brown, Hunton & Williams, Richmond, Va., for Michael J. Gade, Lewis B. Goode, Jr., Edward F. Haley, III, W. Edwin Masencup, Jr., G. Bruce Miller, Roland K. Peters, Elias Richards, III, Kenneth S. White, and Alan L. Wurtzel.

Mitchell A. Karlan, Stephen A. Kaplan, James P. Ricciardi, Stuart D. Karle, Gibson, Dunn & Cruthcer, New York City, and W. Stephen Scott, Paxson, Smith, Gilliam & Scott, Charlottesville, Va., and Edward Lee Isler, Terence P. Ross, Gibson, Dunn & Crutcher, Washington, D.C., pro hac vice, for Hecco Ventures, Cinerama, Inc. James J. Cotter Ltd., and Michael R. Foreman.

John G. Douglass, Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, Va., for Louise, Margot, Mary G., and Samuel B. Aronson, The Fisher Trust and Kenneth L. and Sherilynn A. Fisher.

## MEMORANDUM OPINION

KISER, District Judge.

This matter is before me on motions for summary judgment and motions to dismiss filed by several different groups of defendants. The plaintiff in this action is a large corporation now in bankruptcy. The defendants are former shareholders of the plaintiff who sold their shares to the company as part of a leveraged buyout that converted Craddock–Terry into a closely held corporation. Plaintiff contends that the transaction through which Craddock–Terry purchased its own shares was a voluntary transfer that unjustly enriched the defendants.

*Facts*

The facts underlying this case are essentially undisputed. In April 1985, C–T hired Prudential–Bache Securities, Inc., as financial advisor to study strategic financial alternatives available to C–T. One of Prudential's recommendations was that C–T pursue a leveraged buyout. The Board decided that a management buyout would most likely realize maximum value for shareholders because it (i) would provide the highest expected value to shareholders and had a high probability of success, (ii) would maintain the viability of the enterprise, and (iii) would protect the interests of employees and other constituents. The Board authorized management to explore a buyout at a price of $15 per share.

On June 12, 1985, after an announcement of a proposed LBO by management, C–T received an unsolicited proposal from Southwestern General Corporation proposing a merger under which holders of C–T would receive $17.50 per share. Southwestern withdrew its offer on August 26, 1985, following an announcement by President Reagan that he would not limit the importation of shoes into the United States.

On November 11, 1985, HH Holdings, Inc., a Delaware holding company, made an unsolicited offer for a cash merger in which each share of C–T common stock would be exchanged for $19.00 cash. On November 25, 1985, HH Holdings increased its offer to $20.00 cash per share of C–T common stock (the "merger consideration"). C–T's Board of Directors found the terms acceptable, and the parties agreed to a "reverse triangular merger." HH Holdings formed a wholly owned subsidiary, HH Acquisition, Inc., for the purpose of completing the merger. An Agreement in Principle was signed on December 11, 1985, and an Agreement and Plan of Merger was executed on January 24, 1986, between C–T, HH Holdings and HH Acquisition. The Merger Agreement provided that on April 30, 1986, HH Acquisition would merge into C–T, with C–T as the surviving corporation owned by HH Holdings.

The buyout was consummated on scheduled on April 30. C–T deposited approxi-

mately $27 million into an escrow account held at Sovran Bank.[1] Shareholders were required to tender their shares to the escrow agent, which provided them with $20 per share and then extinguished the shares. Because all of the pre-existing C–T shares were extinguished, HH Holdings, as owner of HH Acquisition, owned 100% of C–T. C–T borrowed about $27 million of the $31 million it placed with the escrow agent.

After the buyout, C–T was unable to maintain a strong financial position. Evidence submitted in other cases conflicts as to whether C–T was unable to pay its bills on a timely basis immediately after the merger, but before long C–T sank into insolvency. C–T filed for bankruptcy on October 21, 1987, and has not yet filed a plan for reorganization.

*Legal Action*

On July 10, 1990, C–T filed this suit against 45 of its shareholders, who received amounts ranging between $6,000 and $6,140,000 each in the leveraged buyout in exchange for their shares. Some of the shareholders were members of C–T's Board of Directors, but most were not insiders. The defendants include trusts, limited and general partnerships, and corporations as well as natural persons.

C–T seeks to void the transfers of money from itself to the former shareholders. It argues that the transfers are voidable under Virginia law because they were not made for "consideration deemed valuable at law." Va.Code § 55–81. C–T also asserts that the transfers unjustly enriched the shareholders at the expense of creditors of C–T's creditors. In addition to return of money, C–T seeks attorney fees and a declaratory judgment disallowing or subordinating the claims the defendants might make against it.

Two defendants, Cede, Inc. and Bartlett & Co., were dismissed from the suit because they were not the beneficial owners of stock registered in their names.[2] All of the remaining defendants have submitted briefs requesting either summary judgment or dismissal of the suit, and all have had an opportunity to participate in oral argument. I shall construe pending motions to dismiss as motions for summary judgment. The grounds for granting summary judgment apply equally to all defendants.

In another action, C–T sued the members of the Board of Directors who approved the merger. C–T asserted that by approving a merger that would leave the company saddled with debt, the directors violated a fiduciary duty to the company's creditors, and also authorized an illegal distribution to shareholders for which they could be held personally liable under Virginia law. I dismissed the counts alleging breach of fiduciary duty, and later granted summary on the illegal distribution count. *C–T, Inc. v. Barrett*, 124 B.R. 689 (W.D.Va.1990) (fiduciary duty); *C–T, Inc. v. Barrett*, 124 B.R. 694 (W.D.Va.1990) (distribution). In the summary judgment ruling, I found that the merger transaction was not a distribution. C–T's appeal of that ruling is now pending with the fourth circuit.

*Analysis*

■ Defendants have presented several alternative arguments in favor of summary judgment. I need consider only one in order to dispose of this case. Both the voluntary conveyance and the unjust enrichment theories advanced by the plaintiff require it to establish that it received no "consideration deemed valuable at law" in return for the payment for the stock. The plaintiff has not presented any facts that would tend to support this claim, nor has it provided any credible suggestion that fur-

---

1. Some defendants believe that HH Holdings and not C–T provided the $30 million payment to the escrow account. The Exchange Agent Agreement requires HH Acquisitions to make this payment. Lee Affidavit, Exhibit 1, § II.B. However, C–T has sworn that this money came from it. Bonacquist Affidavit, ¶ 6. I shall construe this disputed fact in the light most favor-

able to the nonmoving party, and accept the plaintiff's version.

2. On March 7, 1991, C–T recently filed a second complaint against 27 other shareholders. *C–T v. American Securities Corp.*, Case No. 91–0011–L. This group may include the beneficial owners of stock held by Cede and Bartlett.

ther discovery would enable it to make this case.

Under Va.Code § 55–81, a gift is void to creditors if it is "not upon consideration deemed valuable in law." The Virginia Supreme Court has not defined this phrase in a commercial context, but all of the cases focus on whether a transaction involved any valuable consideration at all, and not on the balance sheet test appropriate in actions to avoid preferential payments brought under 11 U.S.C. § 548(a)(2).[3] *See Inspiration Coal, Inc. v. Mullins*, 690 F.Supp. 1502, 1506 (W.D.Va.1988). My ruling in *C-T, Inc. v. PaineWebber, Inc.*, 124 B.R. 700 (W.D.Va.1990) is not to the contrary; there, I suggested that cases decided under "less than a reasonably equivalent value" standard under the Bankruptcy Code, 11 U.S.C. § 548(a)(2)(A) provide guidance for deciding whether C-T's payment of a debt owed by HH Holdings was a voluntary conveyance under Virginia law. I concluded that C-T had received no valuable consideration at all. It was not necessary to consider the issue presented here: If C-T had received some consideration, would the transaction have to meet a balance sheet standard of fairness to survive a challenge as a voluntary conveyance? As Judge Williams found in *Inspiration Coal*, the Virginia Supreme Court has never established such a requirement and has hinted that no requirement exists. In this case, it is clear that C-T received *some* "consideration deemed valuable at law," and I shall not inquire further.

The merger has the appearance of a legitimate, arm's length business transaction: the defendants received money, and HH Holdings received control of C-T. C-T provided the defendants with cash, and received an investment of new capital as well as new management from HH Holdings. Although C-T may have given up more than it received, it gained something, and that is enough to prevent avoidance of the transaction.

Plaintiff argues that for purposes of this action, I should consider the transaction to consist of C-T redeeming all of its own shares. It claims that this was a voluntary conveyance because a company does not benefit from redeeming its own shares. *In re Roco Corp. (Consove v. Cohen)*, 701 F.2d 978, 982 (1st Cir.1983) ("The value to be considered is that received by the debtor and not that forfeited by the transferee").

In the reverse triangular merger, a form chosen by HH Holdings, the beneficial owner of the corporation (HH Holdings) moved into the corporate body of the owned corporation (C-T) through the medium of a shell corporation (HH Acquisitions). In form this resulted in the cancellation of C-T shares rather than a direct transfer from the shareholders to HH Holdings, but in substance beneficial ownership was transferred from the defendants to HH Holdings—not to C-T. Thus, plaintiff's argument that the defendants transferred their shares to C-T, which gained nothing of value, is not persuasive. The defendants transferred everything represented by the shares to HH Holdings, which gained control of the corporation. Since both HH Holdings and the defendants received consideration, the conveyance was not voluntary.[4]

Even if the substance of the transaction is ignored and one considers only the form, the result is the same. The heart of C-T's complaint is that it, and not HH Holdings, provided the merger consideration to the escrow agent, and its financial contribution entitles it to bring this voluntary conveyance action. Assuming this to be true, C-T's payment to its shareholders leaves out half of the transaction. It is undisputed that HH Holdings took over C-T on the

---

3. 11 U.S.C. § 548(a)(2) allows trustees in bankruptcy to avoid a transfer the debtor made within one year of filing for bankruptcy, where the debtor received "less than a reasonably equivalent value" and became insolvent as a result of the transfer. Because C-T filed for bankruptcy more than one year after the merger, this statute is not available to the debtor.

4. In theory, HH Holdings might still argue that it was defrauded on the transaction, if it paid an unreasonably high price for the shares as a consequence of material false statements by defendants or their agents. I need not consider this issue because HH Holdings is not a party to this action.

same day that C–T provided the escrow agent with the merger consideration. The fact that C–T received nothing directly from its shareholders is irrelevant, because it received an investment and new management from HH Holdings and 100% control of the corporations, things that it could not otherwise have obtained. I have earlier ruled that HH Holdings invested at least $4 million in C–T, and that the merger transaction was an attempt to transfer ownership of a viable company and not a disguised distribution of all of C–T's assets. *C–T v. Barrett*, 124 B.R. 694, 698. HH Holdings also signed at least one of the Note and Warrant Purchase Agreements through which C–T borrowed the merger consideration. Bonacquist Affidavit ¶ I. The investment and assistance from HH Holdings are "consideration deemed valuable at law" sufficient to support the entire transaction. C–T would not have received this consideration from HH Holdings if it had not agreed to extinguish the defendants' stock.

C–T also contends that it received no "consideration deemed valuable at law" from HH Holdings. It views HH's investment in C–T as inconsequential in relation to the size of the debt it was forced to incur in the leveraged buyout. This issue was fully litigated in *Barrett*, where C–T claimed that the merger consideration was a distribution of virtually all of C–T's assets and therefore constituted an illegal distribution under Virginia law. I shall not disturb my finding in that case that HH Holdings made a genuine investment in C–T.

*Unjust Enrichment*

■ C–T also claims that the defendants were unjustly enriched by the receipt of $20 share in the merger transaction, and should be required to disgorge the unjust enrichment. "[I]n Virginia, a plaintiff may bring an action for 'money had and received' to recover monies received by the defendant from a third party, but ... the plaintiff must demonstrate that the plaintiff had a preexisting *right* to that fund." *John C. Holland Enterprises v. J.P. Mascaro & Sons*, 653 F.Supp. 1242, 1246 (E.D.

Va.1987). The only basis by which C–T, as trustee for its creditors, claims a right to the merger consideration is that the transfer to the shareholders was a voluntary conveyance in violation of Va.Code § 55–81. Because I have granted summary judgment in favor of defendants on the voluntary conveyance claim, the unjust enrichment claim requires no further consideration.

*Other Issues*

Several defendants also argue that any payments made by Craddock–Terry to its shareholders are exempted from avoidance by 11 U.S.C. § 546(e) because they are "settlement payments made by or to a ... financial institution." *See Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846 (10th Cir.1990). Because I have already ruled in favor of defendants on all counts, I need not address this argument. I also shall not rule, as some defendants urge, that voluntary conveyance or fraudulent conveyance statutes can never be applied to leveraged buyouts. Finally, because defendants shall not be required to surrender the merger consideration, whether claims they might later make against C–T should be subordinated is moot.

*Conclusion*

C–T claims that it gave $30 million to its shareholders and received nothing in return. In fact, the undisputed facts demonstrate that HH Holding made a $4 million cash investment in C–T, and brought in new management, and in return C–T purchased all of its outstanding shares. While the investment did not work out well for C–T's creditors, it was neither fraudulent nor unlawful at the time it occurred. The shareholders may have received more than the stock might otherwise have been worth, but they are entitled to the benefit of the bargain that they struck. They were not unjustly enriched.

The Clerk is directed to send a certified copy of this Memorandum Opinion to all counsel of record, and to Bankruptcy Judge William E. Anderson.

ORDER

On January 30, 1991, came the parties to argue Defendants' Motions to Dismiss and for Summary Judgment. For reasons explained in the accompanying memorandum opinion, it is, hereby ADJUDGED and ORDERED:

Summary Judgment is hereby GRANTED to all Defendants on all counts in the Complaint.

The Clerk is directed to send a certified copy of this Order to Bankruptcy Judge William E. Anderson and to all counsel of record, and to strike this case from the active docket of this Court.