In re Charles Richard COVINO, Dorothy Joan Covino, Debtors.

Soneet R. KAPILA, Trustee, Plaintiff,

v.

Charles Richard COVINO and Dorothy Joan Covino, jointly and severally, and Charles Richard Covino and Dorothy Joan Covino, as the parents and natural guardians of Todd Richard Covino, a minor. Defendants.

Bankruptcy No. 93–32479–BKC–SHF. Adv. No. 94–0905–BKC–SHF–A.

United States Bankruptcy Court, S.D. Florida.

Sept. 26, 1995.

Michael Bakst, Ackerman, Bakst & Cloyd, P.A., West Palm Beach, Florida, for Trustee.

Jeffrey H. Rosenthal, Kind, Rosenthal, Mopsick & Retamar, Boca Raton, Florida, for Defendants.

## MEMORANDUM OPINION

STEVEN H. FRIEDMAN, Bankruptcy Judge.

This cause came before the Court for trial on May 8, 1995, upon the objections to exemptions and the amended complaint of the Chapter 7 Trustee, Soneet R. Kapila, In his amended complaint, the Trustee seeks to avoid and recover fraudulent conveyances pursuant to 11 U.S.C. §§ 544, 548 and Florida Statute § 726. The Court, having considered the testimony of the witnesses, the documentary and deposition evidence presented by the parties, the candor and demeanor of the witnesses, the underlying pleadings, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to F.R.B.P. 7052:

### JURISDICTION

1. This Court has jurisdiction over this subject matter pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(H).

### PROCEDURAL BACKGROUND

2. This action was commenced by the filing of a voluntary chapter 7 bankruptcy petition for Charles Richard Covino and Dorothy Joan Covino (collectively the "Debtors") on July 23, 1993 in Case Number 93–32479–BKC–RAM. The Plaintiff, Soneet R. Kapila, is the duly appointed and qualified trustee in this chapter 7 proceeding (the "Trustee").

3. The Debtors list on their Bankruptcy Schedules an annuity owned by Dorothy Covino valued at 1.5 million dollars, which they claim as exempt on their Schedule "C" pursuant to Florida Statute § 222.21. This exemption was amended on May 4, 1995 to assert a claim of exemption under Florida Statute § 222.14. The Debtors also list the property at 240 Captains Walk, # 501, Del-ray Beach, Florida valued at $220,000.00 as being exempt as homestead pursuant to Florida Statute § 222.01. This claim of exemption also was amended on May 4, 1995 to assert a claim of exemption under Article X, Section 4, Fla. Const.

4. The Trustee filed an Amended Objection to Exemptions on January 12, 1994, as to both the annuity and the homestead property. The basis for the Trustee's objection is that neither of these assets qualify as exempt pursuant to the claimed statutes, and also, that these exemptions should be denied as the annuity and homestead property were purchased by the Debtors to hinder, delay or defraud creditors pursuant to 11 U.S.C. §§ 544, 548 and Florida Statute § 726. The hearing on the Trustee's Amended Objection to Exemptions and Objection to Amended Exemptions, as pled *ore tenus* at trial, and subsequently filed with the Court, was conducted simultaneously with the trial of this adversary proceeding. This Memorandum Opinion is dispositive of all issued raised in the objection to exemptions and adversary proceedings.

### FINDINGS OF FACT

5. In or about 1986, the Debtors invested most of their money and savings, and became personally obligated, on several loans relating to their stock ownership interest in Envirotech Sanitary Landfill Systems, Inc. ("Envirotech"). This corporation was unsuccessful from its inception, and, in approximately 1991, defaulted on its loan with Midlantic National Bank ("Midlantic"). The Debtors were liable to Midlantic on this loan.

6. In 1988, the Debtors executed a mortgage in favor of Royal Bank of Pennsylvania relating to property owned by Absolute Realty, a partnership of which the Debtors owned 25%. In 1990, the obligors on this mortgage and the underlying promissory note, including the Debtors, defaulted.

7. On November 2, 1990, a final judgment was entered against the Debtors in favor of Royal Bank of Pennsylvania in the United States District Court for the Eastern District of Pennsylvania, Case Number 90–7012, in the amount of $2,362,071.03 together with

interest and costs. Pursuant to the Debtors' Schedules, as of the date of this bankruptcy filing, this debt remains unsatisfied.

8. On June 9, 1992, a final judgment was entered against the Debtors in favor of Midlantic National Bank in the Superior Court of New Jersey, Chancery Division, Middlesex County, Case Number F–2385–91 in the amount of $1,801,764.03 together with post-judgment interest from that date. Pursuant to the Debtors' Schedules, as of the date of this bankruptcy filing, this debt remained unsatisfied.

9. In addition to the Envirotech and Absolute Realty investments, the Debtors were involved in several other business ventures in New Jersey dating back to 1987, such that the Debtors' aggregate unsecured indebtedness listed on their bankruptcy schedules totals $6,948.063.90. By August 1990, the Debtors were in desperate financial condition. The Debtors had previously sold the family business of Covino Industrial Disposal Service, Inc. to Charles Covino's brother, who filed bankruptcy in August 1990 along with Covino Industrial Disposal Service, Inc. All cash flow being generated from this business had ceased, and by late August 1990, the Debtors were without a source of income.

10. The Debtors' schedules list total liabilities in the amount of $10,098,063.90.

11. On October 30, 1991, the Debtors sold their New Jersey home for $150,000.00. As evidenced by the Uniform Settlement Statement, the Debtors paid $21,624.04 to Royal Bank to release its judgment lien against the property and paid $19,624.03 to First Fidelity Bank to release its judgment lien from this property. These judgments were not satisfied by these payments as evidenced by the Debtors' Schedules as well as the deposition testimony of the Debtors' attorney, James Moran. The Debtors received no cash proceeds from this sale, and both signed the Settlement Statement.

12. In 1991, the Debtors voluntarily turned over their boat to lienholder Summerset Trust. The boat was not worth the value of the lien, which was approximately $60,000.00.

13. On or about May, 1992, the Debtors went to trial as the plaintiffs in a medical malpractice lawsuit against Valentine Dedulin in the Superior Court of New Jersey, Mercer County Law Division, Docket L–89–1354. During this trial a "Settlement Agreement and Release" (the "Settlement Agreement") was executed by the Debtors, Dedulin, and Medical Inter–Insurance Exchange of New Jersey ("Medial Inter–Insurance").

14. Pursuant to the Settlement Agreement, Dedulin and Medical Inter–Insurance agreed to pay:

A. The sum of FIVE HUNDRED FIFTY THOUSAND DOLLARS ($550,000.00) to Patricia D'Alonzo as guardian ad litem for DOROTHY COVINO, from which sum shall be paid unpaid medical bills, medical liens, and attorneys' fees and disbursements as authorized by the Court.

B. The sum of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00) to CHARLES RICHARD COVINO.

C. The purchase price for an annuity contract from FIRST COLONY LIFE INSURANCE COMPANY providing for payments for the benefit of DOROTHY COVINO in the amount of ONE HUNDRED TWENTY TWO THOUSAND ONE HUNDRED FOUR DOLLARS ($122,104.00) per year and payable on or before the 28th day of April of each year until the death of DOROTHY COVINO, commending April 28, 1993. In the event of the death of DOROTHY COVINO prior to April 28, 2022, the payments in the amounts and on the dates set forth shall continue to Dorothy Covino's beneficiaries as designated in the annuity contract, with such payments to continue through April 28, 2022.

D. The purchase price for an annuity contract from FIRST COLONY LIFE INSURANCE COMPANY providing for payments to TODD COVINO, the minor son of DOROTHY COVINO, in the amount of NINETEEN THOUSAND THREE HUNDRED FORTY SEVEN ($19,347.00) per year

for four (4) years only, commencing on March 19, 1997.

15. On May 21, 1992, the Superior Court of New Jersey entered an Order for judgment which effectuated the Settlement Agreement. This order substitutes Patricia D'Alonzo (Mrs. Covino's sister) as the guardian ad litem for Dorothy Covino.

16. On July 2, 1992, Charles Covino paid off a $188,000.00 mortgage on his home at 240 Captains Walk, #501, Delray Beach, Florida 33483.

17. On or about April 6, 1993, two annuities which were purchased by Medical Inter–Insurance, who in turn had assigned its liability to Jamestown Life Insurance Company (hereinafter "Jamestown"), became effective.

18. The "General Provisions" sections of the annuity contracts provide in pertinent part:

The Owner has all rights stated in this contract. The Owner may amend this Contract with the Company's consent. The Owner's rights are, however, subject to the rights of an irrevocable payee and to the terms of any existing collateral assignment.

19. The total assets of the Debtors as reflected on their bankruptcy schedules, compared to their representations at trial, are greatly in conflict. Based upon Florida Statute § 726.103, the Debtors were insolvent from August 1990, through the date of this bankruptcy filing. The Debtors contest insolvency by relying heavily upon the viability of notes receivables due to them, while in fact, most of these notes either were in default soon after execution, and/or had minimal value, since the obligors either had filed bankruptcy or were no longer operating. The Debtors' position asserted at trial ignores the judgments and liabilities listed on their schedules.

### Conclusions of Law
### OBJECTION TO EXEMPTIONS

■ Pursuant to the terms of the Settlement Agreement, annuities were purchased for Dorothy Covino and her son Todd Covino. The parties do not dispute that the annuities were purchased, but rather, they dispute whether the annuities are exempt under Florida Statute Section 222.14. This statute provides in pertinent part:

[T]he proceeds of annuity contracts issued to citizens or residents of this state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor ... of any creditor of the person who is the beneficiary of such annuity contract, unless the ... annuity contract was effected for the benefit of such creditor.

The Trustee contends that this Court should look beyond the annuity and consider the terms of the Settlement Agreement. In particular, the Trustee focuses on the language of paragraphs 3, 5 and 6 of the Settlement Agreement. These paragraphs provide:

*Plaintiff's Rights to Payments.* The Defendant, the Insurer and/or the Assignee shall not segregate or set aside any of their assets to fund the payments to Plaintiff required herein, it being understood Plaintiff is and shall be a general creditor to the Defendant, the Insurer and/or the Assignee. Said payments cannot be accelerated, deferred, increased or decreased by the Plaintiff and no part of the payments called for herein or any assets of the Defendant, the Insurer and/or the Assignee are to be subject to execution of any legal process for any obligation in any manner, nor shall the Plaintiff have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part thereof, by assignment or otherwise.

*Right to Purchase an Annuity.* The Defendant, the Insurer and/or the Assignee reserves the right to fund its liability to make periodic payments through the purchase of an annuity policy from FIRST COLONY LIFE INSURANCE COMPANY. The Defendant, the Insurer and/or the Assignee shall be the owner of the annuity policy and shall have all rights of ownership. The Plaintiff, Dorothy Covino, shall be designated as the "measuring life" under the annuity policy. The Defendant, the Insurer and/or the Assignee may have FIRST COLONY LIFE INSURANCE COMPANY mail payments directly to the

Plaintiff. The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to FIRST COLONY LIFE INSURANCE COMPANY.

*Qualified Assignment.* The parties hereto acknowledge and agree that the Defendant and/or the Insurer may make a "qualified assignment" within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, to JAMESTOWN LIFE INSURANCE COMPANY of the Defendant's and/or the Insurer's liability to make the periodic payments required herein. Any such assignment, if made, shall be accepted by the Plaintiff without right or rejection and shall completely release and discharge the Defendant and the Insurer from such obligations hereunder as are assigned to the assignee. The Plaintiff recognizes that, in the event of such an assignment, the assignee shall be their sole obligor with respect to the obligations assigned, and that all other releases that pertain to the liability of the Defendant and the Insurer shall thereupon become final, irrevocable and absolute.

If the liability to make the periodic payments is assigned by way of a "qualified assignment":

(A) Periodic payments from the Assignee cannot be accelerated, deferred or increased or decreased by the Plaintiff;

(B) The Assignee does not provide to the Plaintiff rights against the Assignee that are greater than those of a general creditor; and

(C) The Assignee's obligation for payment of the periodic payments is no greater than the obligation of the person originally liable (whether by suit or agreement) for payment and from whom the obligation was assigned.

The Trustee argues that this language establishes that Dorothy and Todd Covino have no control over how the annuity is funded and that they are merely creditors of the Insurer.

The Trustee points to Judge Cristol's decision in *In re Solomon*, 166 B.R. 998 (Bankr. S.D.Fla.1994), as an example of the Court looking beyond the annuity to the underlying Settlement Agreement. Although there is some similarity between the agreement at issue in *Solomon* and the Settlement Agreement in this case, there are significant differences. First, in that case, the debtor sought to exempt a lump sum payment as an annuity. Second, the debtor was not the owner nor the beneficiary of the annuity contract. In this case, the Debtors are not attempting to exempt the lump sum payment made to Dorothy Covino's guardian ad litem. Further, Dorothy Covino and Todd Covino are the beneficiaries/payees of the annuities at issue. The Trustee's arguments mirror the arguments raised and rejected in *In re McCollam*, 612 So.2d 572 (Fla.1993). As in this case, the creditor in *McCollam* argued that McCollam was simply a party to a structured settlement in which the insurance company remained liable for all sums and obligations contained in the agreement. The Florida Supreme Court rejected the arguments of the creditor and determined that the debtor's annuity contract was exempt under Florida law. *McCollam* is the controlling law in Florida and Florida law is applicable to the issue of whether the annuities are exempt. Consequently, the annuity contracts of Dorothy Covino and Todd Covino are exempt under Florida law and the Trustee's objection to the exemptions is overruled.

## FRAUDULENT TRANSFERS

The Trustee next attacks three separate transfers as fraudulent. The first transfer which the Trustee contends was fraudulent is the transfer of the settlement proceeds to Charles Covino who used the funds to pay off his mortgage, thus converting non-exempt assets to exempt assets. Because Charles Covino was a party plaintiff in the malpractice action, the Court does not find that the settlement agreement designating $250,000 to be received by him constitutes a transfer. However, the use of those proceeds to pay off his mortgage does constitute a transfer from non-exempt assets to exempt assets.

This Court has previously determined in *In re Davidson*, 164 B.R. 782 (Bankr.S.D.Fla.1994), that the complainant in an action to avoid a fraudulent transfer need

not show that a debtor's conduct reaches the level of fraud to set aside a transfer, but merely that such conduct was intended to hinder or delay a creditor at the time of the transfer. In *Davidson,* this Court adopted the reasoning of *In re Oberst,* 91 B.R. 97 (Bankr.C.D.Cal.1988) for determining when pre-bankruptcy planning becomes probative of an intent to hinder or delay a creditor. If the transfer is made with a particular creditor in mind, and the debtor has attempted to remove assets from the reach of the creditor, the debtor's discharge will be denied and the debtor's conduct is actionable. However, if the debtor is merely looking to his future well-being, the discharge will be granted, and such conduct not otherwise actionable. In this case, Charles Covino was over $10 million in debt at the time of the transfer. It is clear to this Court that Charles Covino used the settlement proceeds to pay off his mortgage for the sole purpose of hindering his creditors from proceeding against his $250,000 share of the malpractice settlement. Therefore, the transfer of those funds from a non-exempt status to an exempt status is avoidable. Furthermore, the Court determines that it is appropriate to impose an equitable lien in favor of the Trustee against the real property located at 240 Captains Walk, Unit 501, Delray Beach, Florida, to secure payment to the Trustee of the $250,000.00 fraudulently transferred by Charles Covino. *See, In re South Florida Title, Inc.,* 104 B.R. 489 (Bankr.S.D.Fla.1989). Under similar circumstances, the Florida Supreme Court, in *Jones v. Carpenter,* 90 Fla. 407, 106 So. 127 (1925), affirmed the imposition of an equitable lien, and in so doing noted:

> This case presents an instance of injustice and hardship on creditors that the homestead exemption should be extended, and we think appellee must make restitution.

*Id.* at pg. 130. Likewise, equity compels the imposition of an equitable lien against the real property owned by Charles Covino.

■ The next transfer the Trustee seeks to avoid is the alleged transfer to Todd Covino through the annuity. The Trustee contends that this transfer is avoidable under Florida Statute Sections 726.105(1)(a),

726.105(1)(b) and 726.106(1). Pursuant to Florida Statute § 726.106(1):

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

The Court has already determined that the Debtors were insolvent at the time of the Settlement Agreement. Further, Todd Covino was not a party plaintiff in the malpractice action. Thus, he had no entitlement to proceeds when the annuity was formed. The only parties entitled to funds were the Debtors. The Court finds that the transfer of a share of the entitlement to the malpractice recovery, by creating an annuity in the name of Todd Covino, constitutes a transfer as defined under Florida Statute Section 726.102(12). Also, the Debtors did not receive a reasonably equivalent value from Todd Covino in consideration for the annuity. Consequently, the transfer of the annuity in which Todd Covino is the payee constitutes a fraudulent transfer under Florida Statute Section 726.106(1).

■ The final transfer which the Trustee seeks to avoid is the transfer of a share of the entitlement in the malpractice recovery to the annuity in which Dorothy Covino is the payee. Although the term "transfer" as defined under Florida law is broad, the Court has difficulty in concluding that a party's action of choosing to receive settlement proceeds as an annuity, as opposed to receiving such proceeds in some other form, constitutes a transfer. The parties, however, did not address this issue. For purposes of argument the Court will assume, but not determine, that Dorothy Covino's entitlement to the settlement proceeds was a property interest, and that this property interest was converted to an annuity thereby constituting a transfer. With such an assumption, the transfer was from a non-exempt asset (entitlement to to settlement proceeds) to an ex-

empt asset (annuity). The Trustee claims this transfer was a fraudulent transfer under Florida Statute Section 726.105(1)(a) which provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

As mentioned, if a debtor makes a transfer with a particular creditor in mind and has attempted to remove assets from the reach of the creditor, the debtor's discharge will be denied. However, if the debtor is merely looking to her future well-being, the discharge will be granted. Although Dorothy Covino was as heavily indebted as her husband, it was imperative that the proceeds from the settlement be used to pay her recurring medical expenses and to sustain her for the rest of her life. Thus, the transfer of the settlement proceeds to Dorothy Covino's annuity was not fraudulent and will not be avoided.

A final judgment shall be entered in accordance herewith.

ORDERED.

### FINAL JUDGMENT

In accordance with this Court's Memorandum Opinion, it is hereby

**DECREED, ORDERED and ADJUDGED:**

1. Judgment is granted in favor of Plaintiff SONEET R. KAPILA, TRUSTEE, against Defendant CHARLES RICHARD COVINO setting aside the transfer by CHARLES RICHARD COVINO of $250,000 to pay off the mortgage encumbering the real property located at 240 Captains Walk, Unit 501, Delray Beach, Florida and imposing an equitable lien for $250,000.00 against said property in favor of Plaintiff.

2. Judgment is granted in favor of Plaintiff SONEET R. KAPILA, TRUSTEE, against Defendant TODD RICHARD COVINO avoiding the transfer of funds to him and/or for his benefit to purchase an annuity

from First Colony Life Insurance Company providing for payments to said TODD CHARLES COVINO of $19,347.00 per year for four (4) years, in favor of SONEET R. KAPILA, TRUSTEE.

3. Judgment is granted in favor of Defendant DOROTHY JOAN COVINO against Plaintiff SONEET R. KAPILA, TRUSTEE, determining that the acquisition by DOROTHY JOAN COVINO of an annuity with malpractice recovery settlement proceeds does not constitute an avoidable fraudulent transfer.