**In re Richard Jon BENNETT, Debtor.**

**Bankruptcy No. 97–612–BKC–3P3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 27, 1998.

Ronald Bergwerk, Jacksonville, FL, for trustee.

William Navarra, Holly Hill, FL, for Debtor.

Mamie L. Davis, Jacksonville, FL, Chapter 13 Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court on the Trustee's Objection to Debtor's second amended chapter 13 plan. A hearing on the objection was held during Debtor's confirmation hearing, on October 27, 1997. The confirmation hearing was continued on December 9, 1997, to allow the parties to submit additional evidence. Upon the evidence presented at both hearings, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On September 27, 1987, Richard Jon Bennett (Debtor) was involved in an industrial accident at his place of employment in Warwick, Rhode Island. As a result of these injuries, Debtor brought suit against his employers and their insurers. Prior to trial, a settlement was reached on November 8, 1991, which was memorialized in a document titled "Settlement Agreement and Release" (Settlement Agreement).

2.  The Settlement Agreement provided for the following periodic payments to be received by Debtor:

1.  $1500 per month for life with 30 years guaranteed, level rate, commencing 11–20–91.
2.  $5000 payable on 11–20–96, guaranteed.
3.  $10,000 payable on 11–20–01, guaranteed.
4.  $15,000 payable on 11–20–06, guaranteed.
5.  $25,000 payable on 11–20–11, guaranteed.
6.  $75,000 payable on 11–20–16, guaranteed.
7.  $100,000 payable on 11–20–21, guaranteed.
8.  $200,000 payable on 11–20–26, guaranteed.

(Settlement Agreement, ¶ 2.2).

3.  In addition, the agreement provided that "[t]he Defendants and/or The Reliance Insurance Company, itself or through its Assignee, reserve the right to fund the liability to make the Periodic Payments through the purchase of an annuity policy from [Metropolitan]." The annuity purchase would result in a "qualified assignment" in accordance with " § 130(c) of the Internal Revenue Code of 1986." (Settlement Agreement, ¶5.1). However, "[t]he Defendants, The Reliance Insurance Company or the Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership." (Settlement Agreement, ¶ 6.0).

4.  The assignment to Metropolitan occurred, and annuity payments to Debtor commenced on November 20, 1991. The annuity contract lists Metropolitan as owner, Debtor as payee, and his estate as beneficiary. (Debtor's Exhibit 3). The annuity contract provides that Debtor's status as payee is revocable giving Metropolitan the right to designate an alternative payee. *Id.* Pursuant to the terms of the Settlement Agreement, the assignment made Metropolitan "the sole obligor with respect to the Periodic Payments obligation." (Settlement Agreement, ¶ 5.2).

5.  On January 28, 1997, Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code. On his Schedule C, "Property Claimed as Exempt," Debtor claimed the annuity proceeds as exempt under Florida Statute § 222.14. (Debtor's Exhibit 1).

6.  Debtor filed his second amended chapter 13 plan on August 28, 1997. The plan proposes to pay $180.85 per month for the first seven months of the plan, and $367.02 for the remaining twenty-nine months. There is $29,511.28 in allowed claims. Assuming all payments in the plan are made, and no claims are tardy, each unsecured creditor would receive payments totaling 35% of their claim. (Doc. 32).

7.  On October 3, 1997, the Trustee filed her objection to Debtor's second amended chapter 13 plan. During Debtor's confirmation hearing on October 27, 1997, the Court heard the Trustee's objection. At the conclusion of the hearing, the Court gave both parties 10 days to file briefs on the relevant law. The confirmation hearing was continued on December 9, 1997, to allow submission of additional evidence regarding Debtor's interest in the annuity proceeds. Consequently, the parties were given an additional 30 days to resubmit their briefs.

## CONCLUSIONS OF LAW

Section 1325(a)(4) of the Bankruptcy Code provides, in relevant part, that the court shall confirm a plan if—

> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date....

11 U.S.C. § 1325(a)(4) (1997).

If the annuity proceeds are exempt, pursuant to § 222.14, then the proceeds are not subject to liquidation under a hypothetical chapter 7 case. Therefore, the Court must first determine whether the annuity proceeds qualify for exempt status before rejecting Debtor's plan pursuant to § 1325(a)(4).

When a petition in bankruptcy is filed, all interests in the debtor's property become property of the estate. 11 U.S.C. § 541 (1997). However, a debtor may claim certain property as exempt from the estate. 11 U.S.C. § 522 (1997). Because Florida has opted out of the federal exemption scheme provided in § 522(d), Florida law controls a debtor's exemption rights. FLA.STAT.ANN. § 222.20 (West 1989).

Florida Statute § 222.14 provides, in relevant part:

> proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor ... of any creditor of the person who is the beneficiary of such annuity contract....

FLA.STAT.ANN. § 222.14 (West 1989).

In *In re McCollam*, 612 So.2d 572 (Fla. 1993), the Florida Supreme Court addressed the definition of annuity contracts in the context of § 222.14. In that case, the debtor was the beneficiary/payee under an annuity contract purchased to provide payments in connection with a general release and settlement agreement. *McCollam*, 612 So.2d at 572. Focusing on the payment structure of the contract, rather than the underlying obligation, the Supreme Court determined that the term "annuity contracts" should be broadly construed. The Court held that "had the legislature intended to limit the exemption to particular annuity contracts, it would have included such restrictive language when the statute was amended to include annuity contracts." *Id.* at 574.

The Eleventh Circuit in *In re Solomon*, 95 F.3d 1076 (11th Cir.1996), declined to read *McCollam* too broadly. In *Solomon*, the debtor's creditor was required by the settlement agreement to purchase an annuity contract to ensure timely payments to the debtor. *Solomon*, 95 F.3d at 1077. Unlike *McCollam*, the annuity contract in *Solomon* named the creditor, rather than the debtor, as payee. *Id.* Because the debtor was not a party to the annuity contract and therefore had no legal or equitable interest in the annuity, the Court looked at the settlement agreement to determine whether the debtor

could successfully claim the agreement as exempt within the meaning of § 222.14. The Court concluded that the agreement did not qualify for the exemption despite *McCollam's* expansive definition of annuity contracts: "[w]e read *McCollam* to require the existence of an actual annuity contract before a series of payments may be exempt under section 222.14." *Id.* at 1078. The Court further held that in order for a stream of payments to qualify for the exemption "the parties to the agreement must have intended to create an annuity contract." *Id.*

In reaching its decision in *Solomon*, the Eleventh Circuit favorably cited this Court's decision in *In re Conner*, 172 B.R. 119, 121 (Bankr.M.D.Fla.1994), for the proposition that an annuity must be identified as such within the contract's four corners. In *Conner*, the issue was whether property settlement payments, provided in a judgment of dissolution of marriage, constituted an annuity contract pursuant to § 222.14. This Court held that a payment stream alone is insufficient to establish an annuity contract, particularly when there is no evidence that the parties intended to create such a contract. *Conner*, 172 B.R. at 121.

In *In re Covino*, 187 B.R. 773, 777 (Bankr. S.D.Fla.1995), the debtor had entered into a settlement agreement wherein an annuity contract could be used to fund the liability. The agreement also provided that the debtor would not be the owner of the annuity and would have no rights of ownership. *Covino*, 187 B.R. at 777. However, the debtor was to be designated as the "measuring life" and irrevocable payee under the annuity contract. *Id.* The court held that because the facts were sufficiently similar to *McCollam* the debtor was entitled to claim the exemption pursuant to § 222.14. *Id.* at 778.

■ In addition to determining whether a stream of payments qualifies as annuity proceeds, it must also be determined whether those proceeds are "issued to citizens or residents of the state." This Court has held that § 222.14 does not require the annuity contract to be issued to a resident of Florida. *See In re Benedict*, 88 B.R. 387, 389 (Bankr. M.D.Fla.1988). Rather, the statute merely

**658**

requires that the proceeds of annuity contracts be issued to residents of this state. *Id.; but see In re Pizzi,* 153 B.R. 357, 360 (Bankr.S.D.Fla.1993) (holding that proceeds are not issued, contracts are issued).

In this case, the Trustee objects to Debtor's exemption claim regarding his receipt of annuity proceeds from Metropolitan. First, the Trustee argues that the annuity was not issued to a Florida resident. Second, the Trustee contends that because Debtor's payee status can be changed at any time, at the sole discretion of Metropolitan, Debtor has no rights in the annuity contract.

■ The Trustee's assertion that Debtor is not entitled to claim the proceeds exempt, because the annuity contract was not issued to a Florida resident, is without merit. As discussed previously, this Court has held that § 222.14 merely requires the annuity proceeds to be issued to residents of Florida. *See Benedict,* 88 B.R. at 389. It is irrelevant for purposes of § 222.14 that the annuity contract itself was issued to a nonresident. *Id.*

Before addressing the Trustee's second argument, the Court notes that there exists an annuity contract with Debtor listed as payee. Thus, the Court need not examine whether the parties to the Settlement Agreement intended to create an annuity contract. But, this Court must determine whether Metropolitan's right to change the payee causes Debtor to lose his entitlement to a § 222.14 exemption.

■ Debtor's revocable payee status does not prevent him from claiming the annuity proceeds as exempt under § 222.14. First, the statute merely states that annuity proceeds issued to Florida residents are exempt from legal process. Second, Debtor is not merely receiving a stream of payments pursuant to a settlement agreement. Instead Debtor's payee status entitles him to the annuity proceeds under the terms of the annuity contract. *See Conner,* 172 B.R. at 121. This Court will not resort to conjecture regarding Debtor's future payee status for purposes of determining whether the annuity proceeds are exempt. Rather, the Court examines the facts presently before it, and those facts establish that Debtor is currently the payee under the terms of the annuity contract. Therefore, the annuity proceeds are exempt from the property of the bankruptcy estate pursuant to § 222.14.

## CONCLUSION

 Debtor is entitled to claim his interest in the annuity proceeds as exempt under § 222.14. Debtor, a Florida resident, is listed as payee under the terms of the annuity contract. Debtor's entitlement to the exemption precludes the annuity proceeds from being included in a hypothetical chapter 7 liquidation. Accordingly, the Trustee's objection to Debtor's second amended chapter 13 plan, pursuant to 11 U.S.C. § 1325(a)(4) is overruled. The Court will enter an Order consistent with these Findings of Fact and Conclusions of Law.