Statement.

# Richmond.

CRAMER AND OTHERS v. SENGER AND TUMER.

November 21, 1907.

1. VOLUNTARY CONVEYANCES—*Deed to Wife—Consideration paid by Husband—Case in Judgment.*—The evidence in this case establishes the fact that the only consideration for the deed to a wife was a debt due by the grantor's ancestor to her husband. The deed, therefore, was, in effect, a gift of the land from her husband, and as such was voluntary and void as against his then existing creditors.

2. VOLUNTARY CONVEYANCES—*Void as to Existing Creditors of Grantor—When Debt Contracted—Case in Judgment.*—The evidence further establishes the fact that the complainant's debt was contracted long before the date of the voluntary settlement on his wife. The debt grew out of a contract made three years before the date of the deed, under which contract the husband received money from the complainants fraudulently and wrongfully, which they had the right to demand and recover of him. It is immaterial that the adjustment of the account between the parties was not made till after the date of the deed. That would not change the fact that the husband was the debtor of the complainants prior to that time. The grantor being thus indebted at the time of the voluntary conveyance to his wife, the land conveyed is liable for the debt.

Appeal from a decree of the Circuit Court of Augusta county. Decree for the complainants. Defendants' appeal.

*Affirmed.*

The opinion states the case.

*Patrick & Gordon,* for the appellants.

*F. B. Kennedy* and *W. H. Landes,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

Emanual Hise, on the 17th day of March, 1891, in writing under seal, agreed to give to his daughter, Lucinda Catherine Cramer, wife of Ambrose Cramer, ten acres of land, situated in the county of Augusta, adjacent to other lands owned by him, the said ten acres of land to be around about the old Shaffer mansion, and to include the mansion and out-buildings. Emanuel Hise died in 1896 without having carried out the said agreement, and in pursuance thereof, the heirs of Emanuel Hise executed another agreement, to the effect that Ambrose Cramer should take possession of certain property belonging to the estate of Emanual Hise, which was the same property mentioned in his agreement with Catherine Cramer, upon the terms and conditions that he was to have the refusal of the premises and boundary of land at $20.00 per acre, and if he declined to buy at that price, whenever the property was offered for sale, he should pay out of the proceeds of the sale thereof any debts which he might hold against the estate of Emanuel Hise, deceased, and any other just claims that he had paid for the estate, and also the cost of any improvements he might have made upon the property before the date of sale, such claims to be liens upon the property until satisfied.

Upon the reading of both of the above mentioned agreements together, it is clear that the last-named was but an attempt by the heirs at law of Emanual Hise to establish a lien in favor of Ambrose Cramer for whatever amount might be due to him from Hise's estate, in the event the ten acres, including the mansion house and outbuildings, was not conveyed to Catherine Cramer as was contemplated by the first-named agreement. The agreement between the heirs of Emanual Hise and Ambrose Cramer has no date other than the .......... day of ...... 1896, but, by an addendum on the margin thereof, signed by "A. Cramer, administrator," bearing date August 5, 1896, it

is clear that the agreement of the heirs must have been executed prior to this last-named date.

On the 26th day of September, 1896, Senger & Tumer made a contract with Ambrose Cramer for the purchase of certain timber, the contract being made by Cramer as agent for the Shenandoah Land and Anthracite Coal Company. This contract ran from its date down to November 5, 1900, when, upon an account stated between the parties thereto, Cramer was found to be indebted to Senger & Tumer in the sum of $450.18, it having turned out that Cramer was not, in fact, at any time the agent of the Shenandoah L. & A. C. Co. for the sale of the timber upon its lands. Thereupon, Senger & Tumer brought their action at law upon the account stated between them and Cramer in the circuit court of Augusta county, and recovered a judgment for the principal sum of $250, with interest thereon from May 21, 1902, and costs.

In the meantime, to-wit: on the 25th day of February, 1899, the widow and heirs of Emanuel Hise, other than Catherine Cramer, by deed duly executed, acknowledged and recorded, conveyed the ten acres of land before mentioned to Catherine Cramer, for and in consideration of the sum of $200, to be paid in the following manner, viz: "The said party of the second part (Catherine Cramer) holding claims which are to be properly authenticated against the estate of Emanuel Hise, deceased, is to have credit on the purchase money in part payment of said claims at the date of these presents, in accordance with articles of agreement made and entered into heretofore by the parties of the first part" (the widow and heirs of Emanuel Hise, deceased, other than Catherine Cramer.)

Senger & Tumer having, as stated, obtained judgment against Ambrose Cramer, in October, 1902, filed their bill in equity in the circuit court of Augusta county to subject to the lien of said judgment the tract of ten acres of land which had been conveyed as stated on the 25th day of February, 1899, by the heirs of Emanuel Hise, deceased, to Catherine Cramer, on the

ground that said conveyance was made to hinder, delay and defraud the complainants and other creditors of Ambrose Cramer. In other words, the bill charged that, if any consideration whatever was paid for the conveyance of the said land to Catherine Cramer, it was paid by her husband, Ambrose Cramer, and that Catherine Cramer should be considered as holding the land in trust for the use and benefit of Ambrose Cramer, etc.

Upon the hearing of this cause upon the bill, the joint and several answers of Ambrose Cramer and Catherine Cramer, two reports of the commissioner to whom the cause had been referred to take and state certain accounts, and the depositions of witnesses taken on behalf of both the complainants and the defendants returned with the reports of the commissioner, the circuit court, overruling all exceptions to the said reports, in effect decreed in accordance with the prayer of complainants' bill, that the conveyance of the ten acres of land by the heirs of Emanuel Hise to Catherine Cramer was fraudulent and void as to the debts reported in the cause against Ambrose Cramer, and further decreed that, unless the said debts were, within sixty days, paid by Cramer and wife, or some one for them, certain commissioners, appointed for that purpose, should proceed to make sale of the real estate mentioned and described in the bill and proceedings in the cause, etc. From that decree, Ambrose Cramer and Catherine Cramer, his wife, obtained this appeal.

The two questions requiring determination are, (1) Was the consideration for the conveyance of the land in controversy in this cause to Catherine Cramer paid by or with the means of Ambrose Cramer; and (2) Was the debt due from Ambrose Cramer to appellees, Senger & Tumer, on which the judgment sought to be enforced against said real estate was obtained, contracted at the date of said conveyance to Catherine Cramer?

As reported by Commissioner Holt, the evidence shows that Emanuel Hise was indebted to Ambrose Cramer, certainly to the extent of $183.56, at the time that Hise made the agreement

to convey the ten acres of land in question to Catherine Cramer, March 17, 1891, while the agreement to convey the land in controversy, executed by the heirs of Emanuel Hise to Ambrose Cramer, made in 1896, sets forth that he should be entitled to buy the same at $20.00 per acre, or be paid out of the proceeds of the sale thereof any debts that he might hold against the estate of Hise, deceased. This agreement was witnessed by Ambrose Cramer himself, and to it is attached this memorandum: "It is further agreed between the heirs of Emanuel Hise and A. Cramer, that he is to pay rent on said Hise in merchandise to the amount of interest that will accumulate on my account up to day and date above stated, supposed to be about $12.00 against rent August 5, 1896. A. Cramer, Admr."

It thus appears that A. Cramer had actual knowledge of this agreement to convey, and that it was an agreement to convey to himself, and not to his wife, while the conveyance from the heirs of Emanuel Hise of February 25, 1899, of the property was to Catherine Cramer; and this deed recites that it is "in accordance with articles of agreement made and entered into heretofore by the parties of the first part." It is also clear from the evidence, that this deed was made in accordance with the original contract, made between the heirs of Emanuel Hise and A. Cramer, and that Hise was not indebted to his daughter, Catherine Cramer, at any time; while the only inference which can be drawn from the facts proven in the case, is, that Emanual Hise was indebted to A. Cramer, and that the heirs of Hise agreed, in consideration of the cancellation of this indebtedness, to convey to him this land which belonged to their father; and that, when the parties in interest came to execute the deed, it was executed at A. Cramer's request, not to himself, but to his wife.

From this state of facts, no other conclusion could have been reached than was reached by the commisioner and the circuit court, that the consideration for the conveyance to Catherine Cramer moved from A. Cramer and not from herself; in other

words, that the land having been conveyed to Catherine Cramer at the request of her husband, A. Cramer, it was nothing more than a gift from him and void as to his creditors.

But, say appellants, at the time of the said conveyance, Ambrose Cramer was indebted to his wife to the amount of $500, evidenced by a bond for that amount executed to J. G. Fellers by A. Cramer, secured by a deed of trust, and assigned by Fellers to Catherine Cramer, and since A. Cramer was indebted to his wife on this bond, he directed that the deed to the ten acres of land be made to his wife, and she, in consideration therefor, was to credit on the Fellers bond the value of the land thus conveyed to her.

The answer to this contention is, that there is nothing in the record to sustain it. The assignment of the Fellers bond to Catherine Cramer is in blank, and whatever may have been intended by Cramer and his wife as to the value of the land being credited on the Fellers bond, the intention was never carried out. In fact, there is nothing in the record upon which it could be successfully claimed that there was any such intention. On the contrary, the deed to Catherine Cramer from the heirs of Emanuel Hise was recorded along with the contract between said heirs and A. Cramer, in which it is specifically stated that "the said parties of the first part, for and in consideration of the sum of $200, to be paid in manner as follows, viz.: the said party of the second part (A. Cramer) holding claims which are to be properly authenticated, against the estate of Emanuel Hise, deceased, is to have credit on the purchase money in part payment of said claims at the date of these presents, in accordance with articles of agreement made and entered into heretofore by the parties of the first part," etc. The "parties of the first part" in the contract and in the deed are the same persons, and Catherine Cramer presents no other contract between her and the parties of the first part except the one attached to and recorded with the deed to her, which contract is made not with her, but with her husband, A. Cramer. That

Emanuel Hise was indebted to A. Cramer is admitted in the answer in this cause, and there is not the slightest testimony to show that Emanuel Hise was ever indebted to Catherine Cramer. She never, at any time, presented a claim against the estate of Emanuel Hise, deceased, but her husband, A. Cramer, did present a claim in his own favor, and in his settlement as administrator of Hise there is a debt reported in his favor for $185.56, and no funds with which to pay it. It also appears, which is significant, that in a chancery suit brought to sell the lands of Emanuel Hise, deceased, A. Cramer did not present his claim for payment at all, the said suit having been brought after the deed for the ten acres of land had been made to his wife. It appears from the evidence of the parties of the first part to that deed, that they never received any consideration whatever from Catherine Cramer for the conveyance, but that it was fully understood that it was made in settlement of the claims that A. Cramer held against their father, Emanuel Hise, deceased, and in pursuance of the contract they had made with A. Cramer.

It thus appearing that the consideration for that conveyance was the satisfaction of the indebtedness of Emanuel Hise's estate to A. Cramer, there is no ground left upon which Catherine Cramer could rest her contention that she, in fact, paid the consideration for that land by crediting the value thereof upon the Fellers bond, A. Cramer, at the same time, surrendering his claim against the estate of Emanuel Hise. The deed being, therefore, voluntary as to Catherine Cramer, the consideration therefor having been paid with the means of her husband, it was rightly decided by the court below that the land it conveyed was liable for the debts of A. Cramer.

The further contention is made, that, even if the consideration for the conveyance was given by A. Cramer to his wife, the gift was before the indebtedness to appellees arose, and, therefore, the land is not subject to the lien of the judgment of appellees. But this contention is also without facts in the record

to sustain it.   The indebtedness of A. Cramer to appelleees grew out of the contract of September 26, 1896, wherein he fraudulently represented himself to be the agent to sell the timber of the Shenandoah Land and Anthracite Coal Co., and pursuant to that contract, A. Cramer became indebted to appellees long before the deed of conveyance from the heirs of Emanuel Hise to Catherine Cramer, by reason of the fact that he had received money from appellees fraudulently and wrongfully, which appellees had a right to demand and recover of him.   True, there was no adjustment of the account between the parties until after the deed from the heirs to Catherine Cramer, but that would not change the fact that A. Cramer was the debtor of appellees prior to that conveyance.

It seems clear from the evidence that the effort to secure the title to the ten acres of land in question in Catherine Cramer, was purely an after thought, and the effort on the part of Cramer and his wife to show the *bona fides* of that transaction, utterly fails.

The decree of the circuit court must be affirmed.

*Affirmed.*