William J. BROCKINGTON, Appellant,

v.

Vernon R. SCOTT, Trustee in Bankruptcy, Appellee.

In the Matter of: Physicians and Dentists Investment Corporation, Bankrupt.

No. 11063.

United States Court of Appeals Fourth Circuit.

Argued April 6, 1967.

Decided July 11, 1967.

James D. Walters, Columbia, S. C., for appellant.

Marion L. Powell, Aiken, S. C. (Powell, George & Poston, Aiken, S. C., on brief), for appellee.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal from a decision of the district court for South Carolina in the exercise of its bankruptcy jurisdiction. We are asked to define the rights of the Trustee in Bankruptcy and the appellant, Dr. William Brockington, in respect to (1) a building erected by the bankrupt corporation on a lot owned by Brockington, and (2) two promissory notes given by Brockington as consideration for shares of the bankrupt's stock.[1]

### I.

Penetrating the veil of land and lease law terminology which obscures the transaction between the parties, the facts found by the Referee and affirmed by the district court revealed in substance the following situation. Brockington, a dentist, wished to have a business building constructed to house a dental clinic. Partly for tax purposes, it was decided to have the clinic built by the bankrupt corporation, Physicians and Dentists Investment Corporation. Brockington agreed to pay for the building in installments over fifteen years, after which he would have full ownership. The bankrupt was to receive from Brockington a net amount of $229.54 monthly,[2] and in addition, have use of one-half the space in the building, a duplex structure, for a concurrent fifteen-year period. The bankrupt was to pay for insurance and taxes on the building. In the words of the district judge, Brockington "contracted effectively to pay a net sum of * * * $41,317.20 for the building over a period of 15 years * * *." The bankruptcy court found that the building had an actual value of between $45,000.00 and $53,-000.00.

Payments commenced August 1, 1960, and continued in strict compliance with the terms of the agreement until September 1, 1961. From the latter date until April 1, 1962, because of the financial straits of the bankrupt, Brockington made payments to it which amounted monthly to $100.00 more than originally agreed,[3] and also paid taxes and insurance premiums for which the bankrupt was obligated.

On the basis of technical provisions arising from the lease form of his ar-

1. A detailed statement of the facts is in the opinion of the district court.

2. The transaction was actually effected through use of reciprocal leases. They provided (a) that the bankrupt would pay Brockington $100.00 monthly over fifteen years for use of his land, while (b) Brockington would pay the bankrupt $329.54 monthly during the same period for use of one-half the building.

3. Brockington continued to pay the bankrupt $329.54 monthly, but the bankrupt discontinued monthly payments of $100.00 on the land lease.

rangement with the bankrupt corporation, Brockington now maintains that he is entitled to immediate ownership of the building. He so insists in derogation of the rights of creditors of the bankrupt, some of whom financed the construction of the building.[4]

■■ To allow the technical form of the transaction to control would provide a windfall to Brockington, i. e., premature ownership of the building, at the expense of the bankrupt's creditors. "A court of bankruptcy is a court of equity which exercises broad equitable powers * *." Braddy v. Randolph, 352 F.2d 80, 84 (4th Cir. 1965); accord, e. g., Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Bankruptcy courts have invoked these equitable powers "to the end that * * * substance will not give way to form, that technical considerations will not prevent substantial justice from being done." Pepper v. Litton, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939).

■ We hold that in the absence of a fair and reasonable settlement among all interested parties, subject to court approval, Brockington is bound to continue making net payments of $229.54 a month for the duration of the fifteen-year period,[5] and that the bankrupt has the right of possession and use and may continue to collect rent for the half of the building reserved to it during this time. The bankrupt corporation must repay Brockington for any advances made for taxes and insurance and for amounts paid in excess of the agreed net monthly payment of $229.54.

This decision does not disappoint Brockington's proper expectations and gives deserved protection to the interest of creditors of the bankrupt. It is recognition of substance over form, appropriate in bankruptcy proceedings, especially where claims of officers, directors, and stockholders of the bankrupt are under consideration. See, e. g., Braddy v. Randolph, 352 F.2d 80, 84 (4th Cir. 1965).

## II.

■ The district court held that Brockington was liable to the bankrupt on two promissory notes in the combined sum of $18,740.00. The notes were dated December 16, 1960, became due January 1, 1966, and were given as consideration for issuance of shares of stock in the bankrupt corporation.

Brockington argues that since the use of promissory notes as consideration for corporate shares is prohibited by statute in South Carolina,[6] the notes are not enforceable against him. He relies on the principle of *pari delicti*; that is, in this instance, where both parties are equally at fault in participating in the unlawful sale of stock the courts should aid neither.

The district court rejected Brockington's position. Citing the South Carolina case of Greenville & Columbia R. R. Co. v. Woodsides, 39 S.C.L. (5 Rich) 145 (1851), the district court held that the illegality of the transaction does not void the notes, since the statutory prohibition is maintained for the protection of the corporation and its creditors, and not to aid a participant in the illegal transac-

---

4. The lease on the land to the bankrupt provided that if rent shall be in arrears for a period of thirty days, Brockington was to have the right to terminate the lease and take possession of the property. The district court found, however, that Brockington had "acquiesced and condoned the non-payment of rent at least from September 1, 1961 until his alleged resignation from the Board of Directors of [the bankrupt, on which he served] * * * sometime in February 1962."

5. The bankrupt assigned its right to "rent payments" from Brockington to W. A.

Nimmer as security for money advanced by Nimmer for construction of the building. The district court on remand is to fashion an order which will determine and protect the rights of Nimmer.

6. At the time the notes were given for the bankrupt's stock, South Carolina law provided that stock shall not "be issued by any corporation except for money paid, property delivered or labor done." S.C. Code § 12–231 (1962) (repealed 1962).

tion. We agree in the present context, and in so doing are in accord with the general rule. See 11 Am.Jur.2d Bills & Notes § 266, at 294 (1963).

Brockington argued in the district court that he tendered sufficient shares into court to satisfy the notes in accordance with their terms. Although he does not brief this issue on appeal, it is not clear he has abandoned it.[7]

The two notes on their faces provide that Brockington is "to have the right to transfer to Physicians and Dentists Investment Corp. the stock [of the bankrupt] at Three and 75/100 ($3.75) Dollars per share in payment or part payment of this note." On April 18, 1966, some two years after adjudication of bankruptcy, Brockington tendered sufficient stock to the Trustee to constitute full payment by the terms of the note. The Trustee refused the tender.

 Again the substance of the transaction is to determine our disposition. Since the two notes were given as consideration for shares in the bankrupt corporation, the provision amounts to an agreement by the bankrupt to repurchase its own shares at the option of the shareholder, Brockington. The overwhelming, if not universal, view is that such agreements are not enforceable where the corporation is insolvent at the time the option to redeem is exercised. See, e. g., Booth v. Union Fibre Co., 142 Minn. 127, 171 N.W. 307 (1919); Rider v. Delker & Sons Co., 145 Ky. 634, 140 S.W. 1011, 39 L.R.A.,N.S., 1007 (1911); see 3 Collier, Bankruptcy § 63.06 [4] 14th ed. 1966); Dodd, Purchase & Redemption by a Corporation of its Own Shares: the Substantive Law, 89 U.Pa. L.Rev 697, 630–34 (1941). This court noted in Boggs v. Fleming, 66 F.2d 859, 860 (4th Cir. 1933), that "[t]he authorities are unanimous to the effect that,

even though a corporation be solvent when it contracts to purchase its own stock, it may not later, upon insolvency, pay for it, until after the existing creditors have been paid * * *." We find no South Carolina law to the contrary.[8]

The reason for the unanimity on this question is present here as in cases of common application. Forced acquisition by a corporation of its stock, "unless financed from surplus, amounts to a secret liquidation and diverts the [assets] on the faith of which credit was extended the corporation." 3 Collier, supra, § 63.06 [4] at 1783.

The judgment of the district court, therefore, will be

Modified and Affirmed.

---

7. A section of the brief is captioned "All Stock Tendered into Court by Brockington." The argument printed thereunder does not relate to the subject.

8. "Notwithstanding their obvious connection with the law of contracts and of corporations in general, these cases deserve

to be grouped as typical bankruptcy cases, because they either would never have arisen without the financial difficulties that finally resulted in insolvency, or because bankruptcy furnishes a defense that might otherwise not be raised." 3 Collier, supra, § 63.06 [4] at 1781.