In re Arnold I. MEYER, Debtor.

Harry SHAIA, Jr., Trustee, Plaintiff,

v.

Arnold I. MEYER and Naomi A. Meyer, Defendants.

Bankruptcy No. 95–32427–T.
Adv. No. 96–3006–T.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 24, 1997.

James J. Burns, Patrick R. Hanes, Richmond, Virginia, for Trustee.

Bruce W. White, Richmond, Virginia, for Meyers.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Prior to filing his bankruptcy petition, the debtor received a cash bequest from his late father's estate. Although the will did not require him to do so, the debtor used the funds to pay off two mortgages which encumbered a parcel of residential real property held by him and his wife as tenants by the entirety. In this adversary proceeding, the Chapter 7 trustee asserts that those payments constituted a voluntary or fraudulent conveyance which can be recovered by the bankruptcy estate. On November 14, 1996, the court held a trial on the trustee's complaint and then took the ruling under advisement. For the reasons set forth in this memorandum opinion, judgment will be entered in favor of the trustee.

### Findings of Fact

On October 1, 1973, Arnold and Naomi Meyer acquired a parcel of improved real property in Henrico County, Virginia, as tenants by the entirety with a right of survivorship. Although the property had been encumbered and refinanced several times over the years, the interests at issue in this case arose less than five years ago. Specifically, on August 3, 1992, the Meyers executed a promissory note for $163,750.00 in favor of Ryland Mortgage Company[1] and provided as security a first deed of trust on the property. One day later, they executed a second note for $8,602.31 in favor of NationsBanc Home Equity Corporation of Virginia, providing as security a second deed of trust on the property.

The Meyers incurred these debts to pay off a prior lender who had funded the debtor's business, a corporation named Wispy of

---

1. Some time later, Ryland assigned the note to Texas Commerce Bank National Association.

Southern Virginia, Inc., which later traded as Busy Beaver of Virginia. Through that corporation, formed in February 1987, the debtor offered a wide array of consumer home repair services, from window replacement to the installation of aluminum siding. By 1993, however, Busy Beaver had become insolvent and had ceased doing business as an ongoing concern. As a consequence, the debtor was forced to continue accepting gifts from his family and to obtain regular cash advances from his credit cards in order to make ends meet.

On September 12, 1993, the debtor's father died testate. Under the will, the debtor received one cash bequest in the amount of $10,000.00 and another equal to the sum of the outstanding balances on all mortgages encumbering his personal residence. In addition, the will created two trusts with a corpus totaling $1.25 million. The debtor, however, had no right to the income earned by these trusts during his mother's lifetime and would lose any claim to the corpus if he predeceased her.

In two letters mailed in November 1993, the co-executor of the estate reminded the debtor that, although the will referred to the mortgage notes in fixing the amount of the second cash bequest, he was not required to pay any money to Texas Commerce and NationsBanc. Nevertheless, the debtor believed that his father wanted him to own his residence free and clear of any liens and that he therefore had a "moral duty" to pay off the notes. On February 24, 1994, the debtor deposited a check from the estate totaling $169,223.71 into a joint checking account maintained with his wife. He then paid NationsBanc $6,183.75 on February 27, 1994, and Texas Commerce Bank $162,027.90 on February 28, 1994, in full satisfaction of their claims.

At the time the debtor prepaid the mortgage notes, they had not been called. The debtor, however, had defaulted in his repayment to several unsecured creditors.

- Needing operating capital for Busy Beaver, the debtor in 1989 had borrowed $90,000.00 from Michael and Jennifer Fine and

had executed demand notes in their favor. Though the Fines had called the notes, the debtor still owed them $110,833.27 on February 28, 1994.

- On October 5, 1992, the Rusco Window Company had obtained a civil judgment against the debtor for $7,362.31 plus interest and costs. This judgment remained unsatisfied on February 28, 1994.
- On March 8, 1993, the Ted Lansing Corporation had obtained a civil judgment against the debtor for $1,492.62 plus interest and costs. This judgment too remained unsatisfied on February 28, 1994.

These debts, together with those held by other unsecured creditors, had contributed significantly to the debtor's financial woes by the time he received the bequest. Excluding the value of his interest in the real property,[2] the debtor's assets had a value of $60,414.00 on February 28, 1994. (Ex. A to Trustee's Proposed Findings of Fact and Conclusions of Law.) On that same date, excluding any amount due under the mortgage notes, the debtor had liabilities totaling $201,922.00. (Ex. A to Trustee's Proposed Findings of Fact and Conclusions of Law.)

During the following year, the debtor continued to be pressed by his creditors. For instance, when the Ted Lansing Corporation filed a summons to garnish the debtor's wages on January 20, 1995, the debtor was forced to settle the claim and to pay $2,100.00 in full satisfaction of the judgment. Finally, after consulting with friends and an attorney, the debtor filed a petition under Chapter 7 of the Bankruptcy Code on June 13, 1995. In his schedule of property claimed to be exempt from the bankruptcy estate pursuant to 11 U.S.C. § 522(b)(2)(B), the debtor included the residential real property still held with his wife as tenants by the entirety, his contingent interest in the trust created by his father's will, and miscellaneous personal property totaling $10,150.00.

### Trustee's Complaint

The trustee filed a complaint against the debtor and his wife on January 5, 1996, which asserted that the "transfer" of the debtor's individual non-exempt cash bequest into an

2. The parties have agreed that the fair market value of the real property is $175,000.00.

exempt interest in the residential real property constituted both a voluntary conveyance under Va.Code § 55–81 and a fraudulent conveyance under Va.Code § 55–80. The trustee therefore asked the court (1) to award a joint and several judgment against the Meyers for the amount of the "transfer," (2) to find that the trustee can satisfy the judgment by selling the real property, (3) to determine the validity, priority, and extent of interests in and liens on the property, and (4) to approve a sale of the property by the trustee pursuant to 11 U.S.C. § 363(h).

### Discussion and Conclusions of Law

This case presents the novel issue of whether a trustee in bankruptcy can set aside a pre-petition payment made by the debtor, in his individual capacity and with non-exempt funds, on a debt owed jointly by him and his wife and secured by exempt realty which they hold as tenants by the entirety. The court has been unable to find a case directly on point.

### *The Voluntary Conveyance*

The Bankruptcy Code provides that a trustee in bankruptcy "may avoid any interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an [allowable] unsecured claim...." 11 U.S.C. § 544(b). The parties agree that the "applicable law" in this proceeding is that of Virginia, the state in which the events detailed above took place.

Section 55–81 of the Virginia Code provides, in pertinent part, that "[e]very gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law ... by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made...." Therefore, in order for the trustee to prove that a voluntary conveyance has been made under Virginia law, he must prove (1) a transfer made by the debtor (2) for consideration not deemed valuable in law (3) while the debtor was insolvent or by which he was rendered insolvent.

### A.

■ The trustee contends that the conversion of the non-exempt cash bequest into equity in exempt entireties property constitutes a "transfer" under Va.Code § 55–81. To this end, the trustee alleges that, when the debtor paid off each mortgage note, he made two distinct transfers: one to the bank and one to himself and his wife as tenants by the entirety.[3] The Meyers have responded that only a single transfer occurred—the payment of each mortgage note to the bank—and that, in any event, the conversion of non-exempt assets to exempt property does not constitute a "transfer."

■ Virginia law is silent on these questions. Nevertheless, this court must stand in the shoes of the Virginia judiciary and resolve the issues as a state court most probably would. *Powell v. United States Fidelity & Guar. Co.*, 855 F.Supp. 858, 861 (E.D.Va. 1994), aff'd, 88 F.3d 271 (4th Cir.1996). Fortunately, bankruptcy law addresses fraudulent and voluntary conveyances in some depth, and I believe that the Virginia courts would find its approach to the matters raised in this proceeding persuasive.

The Bankruptcy Code defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." 11 U.S.C. § 101(54). This term has been construed broadly, and even where a reading may possess some "technical validity," form has not been elevated over substance. *Smith v. Moody (In re Moody)*, 77 B.R. 566, 572 (Bankr.S.D.Tex.1987), aff'd, 862 F.2d 1194 (5th Cir.1989), cert. denied, 503 U.S. 960, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992); *see also Tonyan Constr. Co. v. McHenry State Bank (In re Tonyan Constr. Co.)*, 28 B.R. 714, 728–29 (Bankr.N.D.Ill.1983); *see generally Pepper v. Litton*, 308 U.S. 295, 304–05, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939) (reaffirming that bankruptcy courts should invoke their equitable powers in order to ensure that "substance will not give way to form");

---

**3.** The trustee has elected not to avoid the "first transfer" to the banks, since the bankruptcy estate would be burdened by an equal amount of new debt.

*Brockington v. Scott,* 381 F.2d 792, 794 (4th Cir.1967). In particular, bankruptcy courts in this district have acknowledged that a single transfer of funds can effect two separate "transfers" under the Code. *See, e.g., In re Wilkinson,* 196 B.R. 311, 319 (Bankr. E.D.Va.1996).

Similarly, the Virginia Supreme Court has laid down "as an inflexible rule that the mere form [of a transaction] is immaterial, but that it is the substance which must be considered." *Valley Acceptance Corp. v. Glasby,* 230 Va. 422, 337 S.E.2d 291, 295 (1985) (quoting *Van Dyke v. Commonwealth,* 178 Va. 418, 17 S.E.2d 366, 369 (1941)). For instance, in *Cramer v. Senger & Turner,* 107 Va. 400, 59 S.E. 375 (1907), the estate of the debtor's father-in-law agreed to convey real property to the debtor as consideration for an antecedent debt. With a judgment creditor ready to attach any property coming into his possession, however, the debtor requested that the estate transfer the property to his wife. The supreme court held that, notwithstanding the form of the transfer, this property effectively had been conveyed to the debtor and then from him to his wife as a gift. *Id.* 59 S.E. at 377. As a result, the court held that the property in the hands of his wife remained subject to the claims of the debtor's creditors.

This decision in *Cramer,* together with the broad definition of "transfer" adopted by the Bankruptcy Code, persuades the court that Virginia law would embrace a liberal reading of "transfer" and that the payment of each mortgage note by the debtor *could* have effected the two separate transfers described by the trustee. The question which remains, then, is whether the debtor's use of the cash bequest *did in fact* cause the second alleged transfer. In other words, would the judiciary in Virginia actually characterize the debtor's conversion of non-exempt assets into exempt property as a "transfer" under § 55–81?

This court finds the decision in *Hyman v. Porter (In re Porter),* 37 B.R. 56 (Bankr. E.D.Va.1984), instructive. In *Porter,* after the debtor had been found liable in state court on an indemnity agreement, he transferred real property to both his wife and himself as tenants by the entirety. The bankruptcy court felt "obliged to address the debtor's contention that the transfer ... was a permissible act of converting nonexempt to exempt assets." *Id.* at 69. While acknowledging that the Code permits such a conversion even on the eve of bankruptcy, the court observed that "transferring real property from one individual to that individual and his wife as tenants by the entirety is not a simple act of converting nonexempt to exempt assets...." *Id.* "Transferring real property from one individual to an individual and his wife is a transfer of property, it is not a mere conversion; the ownership rights are materially altered by the transfer." *Id.; see also Schmidt v. White (In re White),* 28 B.R. 240, 243 (Bankr.E.D.Va.1983) (holding that "it is clear that this is a two party transfer").

Keeping in mind the equitable principle of "substance over form," this court can find no basis for distinguishing the facts here from those in *Porter.* Put simply, the debtor in this case did indirectly what his counterpart in *Porter* did directly. Instead of conveying an individual asset to a tenancy by the entirety of which he was a part, the debtor used his individual funds to extinguish a debt owed by the tenancy. In other words, by paying each mortgage note, the debtor transformed the cash bequest owned solely by him into equity in real property held by both him and his wife as tenants by the entirety. The substance of the transaction is the same— property passed from one legal entity (the debtor) to another (the debtor and his wife as tenants by the entirety). This court therefore holds that the courts of Virginia would deem the debtor's payment of each note as effecting one "transfer" under § 55–81 to the respective bank and a second "transfer" under § 55–81 to the tenancy by the entirety.

## B.

■ The second element of a voluntary conveyance requires that the transfer was made for consideration not deemed valuable in law. The Meyers contend that the debtor received adequate consideration for his payment of the notes when the banks released their liens on the real property. Although this may be reasonable consideration for the

"first transfer" to each bank, the release has no bearing on the "second transfer." Since the trustee seeks to avoid only the latter, the court must focus on consideration which flowed to the debtor from the tenancy by the entirety, not from the banks.

Reviewing the evidence, the court can find none. While the "phrase 'consideration deemed valuable in law' refers to *any* valuable consideration received by the transferor," *Moore v. Manson (In re Springfield Furniture, Inc.)*, 145 B.R. 520, 533 (Bankr. E.D.Va.1992), the tenancy by the entirety incurred no tangible or intangible legal detriment in exchange for the debtor's payment on its behalf. The debtor simply made a gift to the tenancy in the form of the satisfied mortgage notes. Having thus been unable to discern any consideration provided to the debtor from the tenancy, and certainly none which could be deemed "valuable" or "adequate" or "fair and reasonable," the court holds that the trustee has proven the second element of a voluntary conveyance under § 55–81 of the Virginia Code.

### C.

■ Finally, the trustee must show either that the debtor made the second transfer while insolvent or that the transfer rendered him insolvent. A debtor will be deemed insolvent under § 55–81 "when he has insufficient property to pay all his debts." *Hudson v. Hudson*, 249 Va. 335, 455 S.E.2d 14, 17 (1995). Since "both the value of the debtor's assets and the amount of his liabilities" must be shown in order to prove insolvency, *id*, the trustee at trial introduced expert testimony on the debtor's financial worth as of February 28, 1994, the first date by which both notes had been paid.

■ During their cross-examination of the trustee's expert, the Meyers challenged several aspects of the financial analysis. They first argued that the value of the resulting equity, or conversely the amount paid on the notes, should be included as an asset on the balance sheet. This position, however-

er, overlooks the fact that § 55–81 includes as a voluntary conveyance any transfer that renders the debtor insolvent. When ascertaining whether a transfer has had such an effect, the court looks at the debtor's net worth *after* he parted with the property.[4] Including the property's value in the solvency calculation, as the debtor would have the court do, would treat the debtor as still owning the property in his individual capacity and would reveal only whether the debtor was insolvent *before* he made the transfer.

■ The Meyers next objected to the expert's refusal to include the value of the debtor's exempt property as an asset. Since Virginia law does not address this question, the court once again must evaluate the positions adopted by other jurisdictions and decide which, if any, the Virginia courts most probably would follow. In this instance, a consensus appears to have formed around the approach which excludes exempt property from the debtor's assets. *See First Nat'l Bank in Fairfield v. Frescoln Farms, Ltd.*, 430 N.W.2d 432, 436 (Iowa 1988) (finding this theory to be embodied in the common law, in the Uniform Fraudulent Conveyances Act, and in the more recent Uniform Fraudulent Transfer Act); *Babiker v. Citizens Contracting Co. (In re Babiker)*, 180 B.R. 458, 461 (Bankr.E.D.Va.1995) (noting that an identical position has been adopted in the Bankruptcy Code's definition of "insolvent" at 11 U.S.C. § 101(32)(A)).

The rationale for this widely accepted rule is that solvency "based on exempt property is no better than insolvency to a creditor because the property is not available without affirmative action by the debtor." *Frescoln Farms, Ltd.*, 430 N.W.2d at 436. The court believes that this reasoning would be embraced by Virginia courts, particularly since the fraudulent and voluntary conveyance laws were enacted to protect creditors. *See Battle v. Rock*, 144 Va. 1, 131 S.E. 344, 348 (1926) (stating that the "principle upon which voluntary conveyances are held void as to existing creditors is that a man should be

---

4. The Virginia Supreme Court implicitly acknowledged this in *Hudson:* "Thus, Carole was required to establish that the amount of Forest's liabilities at the date of the transfer exceeded the amount of his assets, *exclusive of the transferred real estate,* on the same date." *Hudson*, 455 S.E.2d at 17 (emphasis added).

just before he is generous"). Therefore, in the solvency analysis under § 55–81, the value of the debtor's exempt assets shall not be considered.

■ The Meyers' final quarrel with the trustee's valuation expert centered on his decision to exclude the debtor's contingent interest in the two trusts created under his father's will. While the bankruptcy estate encompasses such an interest pursuant to 11 U.S.C. § 541, *Banner v. Bagen (In re Bagen)*, 186 B.R. 824 (Bankr.S.D.N.Y.1995), *aff'd,* 201 B.R. 642 (S.D.N.Y.1996), it does not follow that the interest should be considered when ascertaining the debtor's solvency under Virginia law. As stated earlier, this court is convinced that the judiciary in Virginia would evaluate solvency from the perspective of the debtor's creditors. In other words, if an asset cannot be attached, then it will not be brought into the analysis. Therefore, the proper question here is whether the debtor's contingent interest can be levied upon by his creditors.

In *Howbert v. Cawthorn,* 100 Va. 649, 42 S.E. 683 (1902), a grantor had conveyed real property in trust for the use of his wife, with a remainder in fee simple to those children who survived her. In evaluating the interest held by the children, the Virginia Supreme Court noted that "such an unsubstantial and shadowy right ... is a pure contingency—a bare possibility whether it will ever exist or not." *Id.* 42 S.E. at 686. "[S]uch an interest hardly rises to the dignity of an estate," and "[o]n the part of a purchaser at a judicial sale, it would be a perfect hazard." *Id.* The supreme court concluded, therefore, that a contingent remainder interest cannot be attached by creditors.[5] Similarly, in this proceeding, any interest which the debtor might claim in the two trusts will be contingent on him surviving his mother. Since *Howbert* holds that such an interest cannot be reached by his creditors, its value should be excluded from the solvency calculation under § 55–81 of the Virginia Code.

For these reasons, and with the Meyers having failed to proffer a contrary analysis, the court accepts the expert testimony introduced by the trustee in full. As a result, the court finds that the debtor had a negative net worth of $141,508.00 on February 28, 1994, and that the payment of $168,211.65 to the noteholders rendered the debtor insolvent under Virginia law.[6]

### D.

■ In light of the foregoing discussion, the court concludes that the debtor made a transfer to the tenancy by the entirety for consideration not deemed valuable in law and by which he was rendered insolvent. Section 55–81, however, voids that transfer only "as to creditors whose debts shall have been contracted at the time it was made...." In addition, § 544(b) of the Bankruptcy Code requires that the same creditor hold "an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

■ Uncontroverted evidence submitted by the trustee reveals that, when the debtor made his mortgage payments to the noteholders, he had at least four existing creditors—Michael and Jennifer Fine, the Rusco Window Company, and the Ted Lansing Corporation. The mandate of § 55–81 is therefore met.[7] As for the condition found in

---

5. Only one change has been made to this rule since the supreme court's decision in *Howbert.* In 1977 the Virginia legislature enacted a provision with authorizes creditors to attach a contingent remainder if the principal defendant is a nonresident or an "absconding debtor." Va. Code § 8.01–547. Even so, the statute still does not permit the interest to be sold until after it has vested. *Id.*

6. The evidence at trial demonstrated that, in calculating the $141,508.00 shortfall, the trustee's expert excluded from the debtor's assets the value of his undivided one-half interest in the real property ($87,500.00) and his contingent remain-

der in the two trusts ($34,000.00). Nevertheless, even if these two interests were included in the solvency calculation and the value of the his exempt personal property ($10,150.00) not deducted from his assets, the debtor's liabilities would still exceed his assets by more than $20,-000.00.

7. Having so concluded, the court does not have to consider whether the transfer constitutes a fraudulent conveyance under Va.Code § 55–80. Nevertheless, the court notes that the trustee did not appear to have established that the Meyers intended to defraud their other creditors by paying off the mortgage notes.

§ 544(b), both the Fines and the Rusco Window Company have filed proofs of an unsecured claim in the debtor's bankruptcy case to which no objection has been made. The trustee thus can stand in their shoes, *Dicello v. Jenkins (In re International Loan Network, Inc.)*, 160 B.R. 1, 18 (Bankr.D.D.C. 1993), and can avoid the voluntary conveyance to the tenancy by the entirety for the benefit of all creditors, *Moore v. Bay (In re Sassard & Kimball, Inc.)*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931); 5 *Collier on Bankruptcy* ¶ 544.09[5] (Lawrence P. King et al. eds., 15th ed. rev.1996).

### *The Trustee's Remedy under § 550(a)*

11 U.S.C. § 550(a) provides that, "to the extent that a transfer is avoided under section 544 ..., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property ... from the initial transferee...." Since the court already has found that the "initial transferee" of the debtor's "second transfer" was the tenancy by the entirety, the only question is "which remedy the trustee should receive." *Kepler v. Security Pac. Hous. Servs. (In re McLaughlin)*, 183 B.R. 171, 176 (Bankr.W.D.Wis.1995). Where the record contains no conflicting evidence of the property's value, courts generally have ordered that the property be returned. *Id.* In contrast, if the property cannot be recovered or if the property's value has been diminished by depreciation or the conversion, the trustee has been awarded the market price. *Id.* at 177. This proceeding presents an interesting twist in that the debtor transferred only a limited amount of equity in the real property. Since this equity cannot be "returned" under § 550(a), the court will enter a joint and several judgment against the Meyers for the $168,211.65 paid to the banks and will impose an equitable lien on the real property to secure payment of that amount to the trustee. *See Kapila v. Covino*, 187 B.R. 773, 779 (Bankr.S.D.Fla. 1995).

In his complaint, the trustee asked that pre-judgment interest from February 28, 1994, be included in any monetary award granted by the court. Of course, post-judgment interest need not be specifically requested since 28 U.S.C. § 1961(a) adds it to any federal court money judgment entered in an action otherwise governed by state law. *Pereira v. Private Brands, Inc. (In re Harvard Knitwear, Inc.)*, 193 B.R. 389, 399 (Bankr.E.D.N.Y.1996). The propriety of pre-judgment interest in a § 544(b) proceeding, however, must be determined in accordance with state law. *See Hayes v. Palm Seedlings Partners (In re Agricultural Research & Tech. Group, Inc.)*, 916 F.2d 528, 541 (9th Cir.1990); *Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455, 465 (N.D.Cal.1996); *see also Citizens Fed. Bank v. Cardian Mortgage Corp. (In re Cardian Mortgage Corp.)*, 122 B.R. 255, 264 (Bankr. E.D.Va.1990).

Va.Code § 8.01–382 provides that a court in its discretion may award pre-judgment interest in order to "compensate the plaintiff who has been without relief for an extended period of time." *Gill v. Rollins Protective Servs. Co.*, 836 F.2d 194, 198 (4th Cir.1987). This court traditionally has awarded interest on a money judgment absent some compelling reason to do otherwise. The Meyers have proffered none in this proceeding, and therefore, the trustee's request for pre-judgment interest[8] from February 28, 1994, will be granted.

### *The Trustee's Power to Sell the Real Property*

As a final matter, the court must rule on the trustee's request that the Meyers' real property be sold. When the debtor filed for bankruptcy, his undivided one-half interest in the residential real property became part of the estate pursuant to 11 U.S.C. § 541. *In re Harry*, 151 B.R. 735, 737 (Bankr.W.D.Va.1992). Even though the debtor has claimed this interest as exempt under 11 U.S.C. § 522(b)(2), the trustee can administer the entireties property for the

---

**8.** Pursuant to Va.Code § 6.1–330.54, pre-judgment interest shall run at the judgment rate of 9%.

benefit of creditors who could reach that property under state law. *Williams v. Peyton (In re Williams),* 104 F.3d 688, 689–90 (4th Cir.1997); *Sumy v. Schlossberg,* 777 F.2d 921 (4th Cir.1985).

■ Virginia law provides that property held by a couple as tenants by the entirety can be attached by their joint creditors. *In re Williams,* 104 F.3d at 690; *Price v. Harris (In re Harris),* 155 B.R. 948, 949 (Bankr. E.D.Va.1993); *In re Shelton,* 201 B.R. 147, 152 (Bankr.E.D.Va.1996). The evidence at trial established that the Meyers own their residence free and clear of any encumbrances except for accrued but unpaid real estate taxes and the equitable lien imposed by this court in favor of the trustee. Since the Meyers remain jointly liable for both these debts, the trustee has standing to request that the entire parcel be sold pursuant to 11 U.S.C. § 363(h) and that the proceeds be used to pay the outstanding taxes and the judgment entered in this proceeding.

■ Section 363(h) provides that the trustee may sell both the estate's interest and the interest of any co-owner only if—

(1) partition in kind is impracticable;

(2) sale of the estate's undivided interest would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale free of the interests of co-owners outweighs the detriment to such co-owners; and

(4) the property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

Since the parties agree that subsection (4) does not apply in this proceeding, the court only needs to decide whether the first three conditions have been met.

■ A family home cannot be divided. Any sale of only the debtor's interest inevitably would leave Mrs. Meyer's possessory interest intact and a buyer unable to assume physical control of the house. The court therefore finds partition impracticable. *See* 3 *Collier on Bankruptcy* ¶ 363.08[1] (Lawrence P. King et al. eds, 15th ed. rev.1996).

■ For the same reason, the court finds that a sale of only the debtor's interest would realize "significantly less" than a sale of the whole. With a buyer being denied possession, selling the debtor's interest alone would be tantamount to selling only his right of survivorship. *See id.* at ¶ 363.08[2][c]. Without question, such a sale would generate little, if any, benefit for the estate.

■ As for the balancing test in § 363(h)(3), the court recognizes that "non-economic, emotional or psychological detriment" should be considered "in addition to any economic detriment that may be suffered by the co-owner." *Price v. Harris (In re Harris),* 155 B.R. 948, 950 (Bankr.E.D.Va. 1993). Other than the fact that their home sits on the real property, which is not unusual in a bankruptcy case, the Meyers have offered no evidence of any particular harm which a sale would cause Mrs. Meyer. Nevertheless, since this court's ruling on an unsettled question of law has provided the basis for the trustee's motion to sell, the Meyers shall have 30 days to explore other avenues for satisfying the judgment immediately and in full. If they do not suggest a viable alternative within that time, the court will permit the trustee to sell the real property.

### Conclusion

In light of this opinion, the court will enter joint and several judgment against the Meyers and in favor of the trustee for $168,-211.65, plus interest at the rate of 9% from February 28, 1994, until the date this judgment is entered. In addition, the court will impose an equitable lien on the real property to secure payment of that amount and will set the procedure by which the trustee can pursue his motion to sell.