PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

In Re: ARNOLD I. MEYER,
Debtor.

HARRY SHAIA, JR., Trustee,

Plaintiff-Appellee,

No. 98-1534

v.

ARNOLD I. MEYER; NAOMI A. MEYER,
Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-97-352, BK-95-32427-DOT, AP-96-3006)

Argued: March 4, 1999

Decided: March 28, 2001

Before WIDENER, LUTTIG, and MICHAEL, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Widener wrote
the opinion, in which Judge Luttig and Judge Michael joined.

_____

COUNSEL

ARGUED: Bruce H. Matson, LECLAIR RYAN, P.C., Richmond,
Virginia, for Appellants. James Joseph Burns, WILLIAMS, MUL-
LEN, CHRISTIAN & DOBBINS, Richmond, Virginia, for Appellee.

**ON BRIEF:** Paula Steinhilber Beran, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellants. Patrick R. Hanes, WILLIAMS, MULLEN, CHRISTIAN & DOBBINS, Richmond, Virginia, for Appellee.

_____

## OPINION

WIDENER, Circuit Judge:

Defendants, Arnold and Naomi Meyer, appeal the district court's judgment in favor of plaintiff, Harry Shaia, Jr. (trustee), in a bankruptcy proceeding pursuant to 11 U.S.C. § 544(b). The district court affirmed the bankruptcy court's holding that Meyer's pre-payment of mortgages on real property owned by himself and his wife as tenants by the entirety with funds he was bequeathed under the will of his father was an avoidable voluntary conveyance under Virginia Code § 55-81. The district court further affirmed the bankruptcy court's joint and several judgment against the Meyers in the amount of the mortgage pre-payment plus interest costs.

We emphasize at the outset that the only question before us is whether or not the prepayment of the previously existing secured mortgage obligation is a voluntary conveyance which may be set aside under Virginia Code § 55-81. That Code section provides, in pertinent part, that

> Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made.

Va. Code § 55-81. To avoid a transfer pursuant to this provision, the trustee must demonstrate that (1) a transfer was made, (2) the transfer was not supported by consideration deemed valuable in law, and (3)

2

the transfer was done when the transferor was insolvent or the transfer rendered the transferor insolvent.

The transfer which was made was the payment of the mortgages from the personal funds of Meyer. That is acknowledged. The holding of the bankruptcy court, that the payment to the mortgage note holders rendered Meyer insolvent, was affirmed by the district court on appeal, and is not contested on appeal to this court. Therefore, the only issue here is whether or not the payment of the mortgage notes was supported by "consideration deemed valuable in law." We are of opinion that the payment of the mortgage notes was supported by consideration deemed valuable in law. Thus, we vacate the judgment of the district court and remand for further proceedings, should the trustee be so advised.

By deed dated October 1, 1973, the Meyers acquired their residence as tenants by the entirety with the right of survivorship as at common law. By February 1994, the Meyers' residence was encumbered with secured mortgage obligations that totaled $168,211.65. In addition to these mortgages, Meyer was responsible for several unsecured debts that he had obtained through the years to support his various business ventures. Meyer was in default on his repayments to several of these unsecured creditors.

On September 12, 1993, Meyer's father died testate. The father's will contained a specific bequest to Meyer, individually, of a "sum equal to the remaining principal balances, if any, of all mortgages upon . . . [Meyer's] principal residence" at the time of the father's death (the cash bequest). The exact amount of the bequest was $169,223.71. Meyer deposited the cash bequest into a joint checking account that he shared with his wife. Then, on February 27 and 28, 1994, Meyer delivered two checks in the total amount of $168,211.65 to the mortgage creditors (the mortgage pre-payment). Upon receipt of the mortgage pre-payment, the creditors released their security interests in the Meyers' residence.

Meyer's financial situation worsened throughout 1994, and on June 13, 1995, he declared bankruptcy under Chapter 7 of the Bankruptcy Code. Upon reviewing the bankruptcy schedules filed by Meyer, the trustee discovered that Meyer had used most of the substantial cash

3

bequest to pre-pay and satisfy two mortgages secured by his residence that he co-owned with his wife as tenants by the entirety. Meyer claimed that this residential property was exempt from his creditors in the bankruptcy proceedings pursuant to 11 U.S.C. § 522(b)(2)(B). The trustee objected to Meyer's claimed exemption of the residence and filed a complaint in an adversary proceeding against the Meyers on January 5, 1996. The complaint asserted that, by the payment of the mortgage on the residence, the transfer of the debtor's individual nonexempt cash bequest into an exempt interest in the residential real property constituted both a voluntary conveyance under Va. Code § 55-81 and a fraudulent conveyance under Va. Code § 55-80.

The bankruptcy court determined that when Meyer made the pre-payments of the two mortgages, two distinct transfers occurred simultaneously. Shaia v. Meyer, 206 B.R. 410, 416 (Bankr. E.D. Va. 1997). First, there was a transfer from Meyer to the mortgage creditors. Second, there was a transfer from Meyer to the tenancy by the entirety as a result of the increased equity in the residence that occurred when the residence was freed of all encumbrances. Shaia, 206 B.R. at 416. The court held that the second transfer was not supported by valuable consideration and avoided the mortgage pre-payment as a voluntary conveyance under Va. Code § 55-81. Shaia, 206 B.R. at 417.*

The Meyers appealed the bankruptcy court's judgment, and the district court affirmed. The court stated that "Mr. Meyer attempted to transfer the cash bequest, his individual, non-exempt asset, from himself to himself and his wife as tenants by the entireties. The transfer of [the] cash bequest, therefore, resulted in a corresponding increase in the equity in the exempt, real property." The court concluded that the mortgage pre-payment "should be voided [as a voluntary convey-ance] to prevent the creditors from being prejudiced by Mr. Meyer's effort to convert the non-exempt cash bequest into an exempt asset." We disagree with the district court's application of the voluntary conveyance statute and hold that the mortgage pre-payment was a single
_____
*Because the bankruptcy court avoided the mortgage pre-payment as a voluntary conveyance it did not address the trustee's argument that the transaction also was voidable as a fraudulent conveyance under Va. Code § 55-80. Shaia, 206 B.R. at 418 n.7.

4

transaction that was supported by consideration deemed valuable in law.

As there are no factual issues in dispute, we review the district court's legal conclusions de novo. See Yancey v. Varner (In re Pucci Shoes, Inc.), 120 F.3d 38, 40-41 (4th Cir. 1997). The Bankruptcy Code provides that a trustee in bankruptcy "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an [allowable] unsecured claim." 11 U.S.C.§ 544(b)(1). The litigants agree that Virginia law is the applicable law in this proceeding.

Va. Code § 55-81 simply requires that a transfer or conveyance be "upon consideration deemed valuable in law." This phrase refers to "any valuable consideration received by the transferor." See Moore v. Manson (In re Springfield Furniture, Inc.), 145 B.R. 520, 533 (Bankr. E.D. Va. 1992). Here, the parties agree that Meyer transferred $168,211.65 to his mortgage creditors in satisfaction of his outstanding debt. In return for this payment, the creditors released their secured claims to the Meyers' property. The creditor's release of secured debt against his property is surely valuable consideration that Meyer received in return for pre-paying the mortgage. See also Berg-quist v. Theisen, 45 B.R. 122, 127 (Bankr. D. Minn. 1984) (holding that payment of antecedent secured debt was "fair consideration" and rejecting a second transfer theory which claimed, as here, that payment of a secured debt on real estate subject to homestead exception was a voidable transfer to exempt property).

Two cases decided by district courts in Virginia are consistent with our decision as to a "consideration deemed valuable in law" under Va. Code § 55-81. In Inspiration Coal, Inc. v. Mullins, 690 F. Supp. 1502 (W.D. Va. 1988), the question was whether deeds of trust given by Mullins to secure antecedent indebtedness of Mullins to the two banks involved met the requirements of the statute. Relying on a line of Virginia cases, e.g., Bank of Commerce v. Rosemary & Thyme, Inc., 239 S.E.2d 909, 912 (Va. 1978), holding that an antecedent debt is valuable consideration for a conveyance of land, the court held that the antecedent debt of Mullins to the banks was consideration deemed valuable in law under § 55-81, precisely the same Code section involved here. C-T of Virginia v. Euroshoe Associates, 762 F. Supp.

5

675 (W.D. Va. 1991), aff'd, 953 F.2d 637 (4th Cir. 1992) (table), was a case involving a leveraged buyout of a shoe manufacturing company. The new controlling shareholders set up a third corporation to furnish funds, which new corporation purchased all of the outstanding shares of C-T, the original shoe manufacturing company. The form of the transfer was payment by C-T to its shareholders. Following the bankruptcy of C-T, it sought to set aside the purchase of its own shares because they were not for a consideration deemed valuable in law under § 55-81. Following <u>Inspiration Coal</u>, the court held that the shareholders received money for their stock and the holding company received control of C-T, which, in the opinion of the court, was consideration deemed valuable in law. The court pointed out that C-T "gained something, and that is enough to prevent avoidance of a transaction." <u>C-T of Virginia</u>, 762 F. Supp. at 678.

<u>Inspiration Coal</u> relied on <u>Mitchell Powers Hardware Co. v. Eaton</u>, 198 S.E. 496 (Va. 1938), which held that a note secured by a pledge of stock given by a man to his sister was for a consideration deemed valuable in law when the consideration for the note was that she would perform the man's duty of keeping up his aged mother.

The district court, however, proceeded further in its analysis of the transaction. As a result of Meyer's mortgage pre-payment, the equity in his residence increased because the property was no longer encumbered with the secured mortgages. Consequently, the district court found that through the mortgage payment Mr. Meyer transformed the cash bequest (nonexempt property) owned solely by himself into equity in real property (exempt property) held by both himself and his wife. The district court adopted the bankruptcy court's conception of the transfer as one in which Meyer's mortgage payments effected one transfer under Va. Code § 55-81 to the mortgage creditors and a second transfer under § 55-81 to the tenancy by the entirety. The court then avoided the mortgage pre-payment as a voluntary conveyance on the basis that the second transfer to the tenancy by the entirety was without consideration deemed valuable in law.

In reaching this conclusion, however, the district court misapplied the voluntary conveyance statute. It relied on three cases for its conclusion, <u>Cramer v. Senger & Tumer</u>, 59 S.E. 375 (Va. 1907); <u>In re: White</u>, 28 B.R. 240 (Bankr. E.D. Va. 1983); and <u>In re: Porter</u>, 37

6

B.R. 56 (Bankr. E.D. Va. 1984). These cases, however, are on facts so different from the case at hand that they are not persuasive. In Cramer, a husband who was subject to a judgment recovered against him in a state court, caused to be conveyed to his wife ten acres of land to which he was entitled. The court held this conveyance was "nothing more than a gift" and void as to his creditors, affirming the lower court which had ordered the ten acres of land sold to satisfy the said judgment against Cramer in the state court. Cramer, 59 S.E. at 377. Both White and Porter involved cases in which a man who owned real estate in his own name had conveyed the real estate to himself and his wife as tenants by the entireties. In White the court held that "White was insolvent at the time he transferred his interest in the real estate to himself and his wife, for which he received nothing of legal value in payment." White, 28 B.R. at 243. White being insolvent at the time of the conveyance, and having a previous judgment of record against him, the court held that the transfer constituted a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(2)(B)(i) (transferor insolvent on the date the transfer was made). In Porter, following a finding of liability in a state court, but before judgment was entered in the amount of the liability, Porter conveyed the real estate involved to himself and his wife as tenants by the entireties. The property was valued at $88,000 at the time, and the consideration was claimed to be wills executed by husband and wife, disposing of the entire estate of each to the other and various items of personal property valued at $2,245. The wife testified, however, that the bankrupt husband would have transferred the house into both their names "even if she had not transferred anything of value to him in exchange." 37 B.R. at 59. Under those circumstances, the bankruptcy court held that there was not "a reasonable equivalent value in exchange for such transfer" under 11 U.S.C. § 548(a)(2)(A) or a "valuable consideration" under Va. Code § 55-80, or a "consideration deemed valuable in law" under Va. Code § 55-81. Porter, 37 B.R. at 69. The facts of none of those cases deal with the payment of a pre-existing mortgage debt on property held by the entireties, and we are of opinion they are not persuasive in this case. Rather, we follow the cases of Inspiration Coal, Inc., C-T of Virginia, and the line of cases illustrated by Bank of Commerce as we have mentioned above. The transfer in this case, which is sought to be avoided, is the payment of Meyer to the mortgage holders. Because we hold that transfer was for

7

"consideration deemed valuable in law" under Va. Code § 55-81, we proceed no further with our reasoning in this case. Section 55-81 does not apply, and thus we reject what may be called a second transfer theory, that the payment of the mortgages was itself a second transfer because the land was held by the entireties.

In arriving at our decision, we are reminded of the almost unimaginable consequences of affirming the holding below in this case, that the payment by one who is insolvent or rendered insolvent, of a pre-existing mortgage debt on property held by the entireties, is not for a "consideration deemed valuable in law" under Va. Code § 55-81. We do not know, of course, what proportion of the homes in Virginia are held by husband and wife by the entireties, but half would be an estimate, not subject to reasonable dispute. If we affirmed the holding below, every time one spouse filed for bankruptcy each payment on the mortgage on a property held by the entireties made while the spouse was insolvent, or which rendered the spouse insolvent, would be void as to previous creditors. The result would be chaotic, at best.

When questioned at oral argument with respect to this effect as to monthly payments on mortgages on homes and automobiles held by the entireties, the trustee, as a part of an answer to a question, stated:

> I think it's a difference of degree.
>
> Q: Your answer is that trustees just aren't going to bother with the small things.
>
> A: That is my answer.

According to Sheshunoff, Bank and S&L Quarterly, however, the September 1999 United States domestic mortgage debt to banks was $1,510.3 billion. Even the monthly payments on Virginia's pro-rata share, $38.3 billion, is hardly a small thing. And we have not considered the billions in loans not from banks. That argument also does not support the conclusion of the district court.

The judgment of the district court is accordingly vacated, and the case is remanded for further action not inconsistent with this opinion, should the trustee be so advised.

VACATED AND REMANDED

8